## BARNEY vs. SMITH.

APPEAL from *Baltimore* County Court. *Assumpsit* brought on the 17th of July 1809, by the plaintiff, (now appellee,) as surviving partner of *S. & J. Smith*, against the defendant, (the appellant.) The declaration contained counts for money had and received—for money laid out and expended, and on an *insimul computassent*. All these promises and accountings are stated to have been to and with *S. & J. Smith*, in the life-time of the said *J.* The defendant pleaded *non assumpsit, non assumpsit infra tres annos,* and *actio non accrevit infra tres annos*. General replication to each plea and issue.

1. At the trial the plaintiff gave in evidence, that he, together with *John Smith*, deceased, was the owner of two *American* ships called the *Sidney* and the *Pomona*, which in the year 1794 were detained in *France* by the *French* government several months; that for this detention, the *French* government, on the application of the defendant, made in the name and on the behalf of the plaintiff and his said partner, allowed to them the sum of 39,330 livres current money, of *France*, and ordered it to be included in a general balance of 156,105 livres 16 sous and 9 deniers, the residue being due to the defendant on other accounts; that for this general balance the said government caused to be issued and delivered to the defendant a transferrable certificate of debt in his own name, which he received and sold at a discount of 50 p c. and converted the proceeds to his own use. The defendant then read in evidence a letter from the plaintiff to *Albert Gallatin*, Secretary of the Treasury of the *United States*, dated *Baltimore, June* the 20th 1804: "In a letter I received from you some time past, you inclosed a note of claims substantiated by Cap. *Barney* in the *French Bureau*, and submitted to the *American* commissioners—the first item of which, to wit, ls. 156,105 16 9, you say is claimed in my name, and in the name of other shippers of flour under contract with *Fauchet*. I owe it to myself to state, that I have no claim whatever against the *French* nation on that account—that I have been fully paid for the contract alluded to—and further, that I never have authorised any person to claim for me. If recovered, I hereby disclaim every pretension whatever thereto." This letter had been furnished to the defendant by the plaintiff. The plaintiff thereupon, in order to explain the letter, by shewing what was the tenor of the note therein referred to, produced the following note or memorandum in his possession, and proved to be in the handwriting of *Albert Gallatin*, and offered to read it to the jury: "Extract from the list of *American* claims against the *French* government, supposed to be proved by the convention.

2d year, Fructidor, No. 40, *Joshua Barney*—Flour delivered at *Bordeaux*,    156,105 16 9

In *assumpsit* by S S, as surviving partner of S and J S, the declaration stated the promises to be to S and J S, in the life-time of J S. The act of limitations was pleaded, and to take the case out of that act, evidence was offered of a promise made t S S, after the death of J S. *Held,* that the evidence was sufficient to avoid the statute; and that there was no necessity to declare specially on the promise to the plaintiff, as surviving partner. The case of a surviving partner is distinguishable from that of an executor or an administrator. The right and remedy are united in him as the original promise made to him, and his deceased copartner, still exists, and the right of action with the remedy survive to him. The acknowledgment to the surviving partner saves and preserves the remedy in the survivor, and avoids the bar of the act of limitations. It does not create a new *assumpsit*, but is a saving of the remedy on the original promise. An acknowledgment of the debt, an offer to come to a settlement, or to refer to arbitrators, will take a claim out of the act of limitations. Per *Johnson*, J Where the defendant had read in evidence a letter from the plaintiff to A G, referring to a memorandum which A G had sent to the plaintiff, such a memorandum may be read in evidence by the plaintiff for the purpose of explaining the letter.

Decree of the 29th Germenal 16 year,
5 year, Floreal 115.   *Joshua Barney* for
          *Bentalou,* balance of supplies
          at *Cape Francois,*        695,550 16
Do.   do.   do.   balance of a bill from *St.*
          *Domingo,*            15,392
6 year, Germenal.   The *Bungtall, Joshua*
          *Barney,* freight of a ship,   . 81,560

Ls. 898,608   6 9."

But the defendant objected to the reading of this note
for the purpose for which it was offered.   This objection
the Court, [*Nicholson,* Ch. J.] overruled, and permitted
the note to be read.   The defendant excepted.

2.  The plaintiff then offered in evidence an award and
settlement, made by the proper officers of the *French* go-
vernment, whereby was awarded to the defendant, as agent
of the plaintiff and *J. Smith,* for demurrage due by the
*French Republic* to them on the ship *Pomona,* the sum of
21,850 livres, and the sum of 16,800 livres for demurrage
on the ship *Sidney.*   He also proved that *Paul Bentalou,*
as agent of the defendant, on the 9th of April 1803, sold
the said two claims against the *French* government to *Ro-
bert Fulton,* at a discount of 50 per cent. and received the
amount of the purchase.   He further read in evidence a
letter from himself to the defendant, and the defendant's an-
swer to the same, the first dated *Washington* the 19th of Feb-
ruary 1805, viz.   "On examining a list furnished by the com-
missioners at *Paris* to the department of state, I find that an
account in your favour, originating in the year 2 of the *French*
Republic, had passed the board, and was then before the mi-
nister of *France* for his decision, before which was known
it was deemed improper to carry out the amount.   On fur-
ther inquiry I am informed that one item of that account
is for arbitrage for detention of ships which brought the
flour, 14,930 bbls. alluded to in a previous item, at 89,430
livres.   The account is dated. *Paris an.* 10, and signed by
you.   I presume the bills will soon begin to arrive from
*France* for such claims; I will therefore be obliged by your
forwarding to me a statement of the proportion due to the
*Pomona* and *Sidney,* which ships have been employed in
carrying that flour, for their detention, so that I may know
the precise amount due to *S. & J. Smith.*   I observe that
an interest of 6 per cent will be paid thereon from the 8th
Fructidor, *an.* 4.   Your answer will greatly oblige yours,"
&c.   The answer, dated *Baltimore,* the 21st of February
1805, is as follows, viz.   "You wrote on the 29th of Novem-
ber 1803, on the same subject as your letter of 19th inst.
In my answer to your first I gave you every information
I had, which answer you sent forward to your friends at
*Paris,* of course must have received a further statement
from them.   In answer to your last I have to inform you,
that I have never received any information from my friends

in *Paris*, that any claim of mine had passed the *American* board, but on the contrary, that my claims had been rejected by them, and I suppose from the information of some zealous partizans in this country to the executive, who said my claim had been paid, and was unfounded, &c. If any claim of mine has been allowed as due in the year two, no doubt it has been sold previous to the treaty of 1803, as I gave such orders, and which I mentioned to you in mine, in answer to your letter of the 29th November 1803. But, Sir, I had no claim for 89,430, it was for 156,105 16 9, which sum was mentioned to the executive by the commissioners, as will fully appear by your letter to the secretary of the treasury, dated the 20th January 1804, (a copy of which I have, and to which I now refer,) that letter also explains what claims you can have on the above sum, if ever received by me. Whenever I receive a full statement from my friend in *Paris*, I shall not hesitate to communicate it to any person concerned." The defendant thereupon proved, that the *French* liquidation in the month of January 1806, upon a revision of the said claims confirmed the same, and that they could not be paid until they had been confirmed by the *French* liquidators. And he further proved, that the said *John Smith* died in the month of June 1805. The plaintiff then offered evidence to prove, that when he wrote the before mentioned letter to *Albert Gallatin*, he was wholly ignorant that any claim for the demurrage aforesaid, or any part thereof, was included in the said sum of 156,105 livres 16 sous and 9 deniers, mentioned in the aforesaid note. The plaintiff also, to prove that within three years next before the time of bringing this action the defendant made a new promise to pay the money so by him received to the use of the plaintiff, gave in evidence by a competent witness, that in the month of June 1809, there was a suit depending between the defendant, and one *John Hollins*, in the court of chancery of this state, in which *Hollins* claimed from the defendant, among other things a certain sum for the demurrage of the ship *Adeline* and brig *Moggy*, which had been allowed by the *French* government, at the same time and in the same manner with the allowance for demurrage on the *Pomona* and *Sidney*, and was alleged by *Hollins* to have been received by the defendant at the same time, and in the same manner, with demurrage on the *Sidney* and *Pomona*; that in the said suit in chancery the plaintiff was examined as a witness for *Hollins*, under a commission from the court of chancery, to prove the receipt by the defendant of the said demurrage on the *Adeline* and *Moggy*. That the defendant being present at that examination in the month of June 1809, the plaintiff said to him, I suppose you have concluded that I have given up my claim against you, meaning as the witness then and ever since believed, the claim of the plaintiff and *John Smith* for the aforesaid demurrage on the *Sidney* and *Pomona*. To which question the defendant, without in any manner denying the debt, or refusing to pay it, replied No.

1819.

Barney
vs
Smith

I suppose you are waiting the result of the suit between Mr. *Hollins* and me, meaning, as the witness understood and believes, the claim of *Hollins* for the demurrage of the *Moggy* and *Adeline* aforesaid; and also referring, as the witness understood and believes, to the question depending between the defendant and *Hollins*, whether *Hollins* should recover from the defendant the full sum allowed as aforesaid for demurrage, or the sum only which the defendant had received from the sale. Whereupon the plaintiff then said to the defendant, "If you would meet me, there could be no difficulty in settling on amicable terms." To which the defendant replied, "No, I have had enough of arbitrations, and now I want equity." And also for the purpose last aforesaid, the plaintiff produced and read in evidence, by the consent of the defendant, the following letters to him from the plaintiff, concerning the said demurrage for the *Sidney* and *Pomona*, dated the 25th of January 1809. "In March I mean to make a final settlement of the affairs of *Saml. & John Smith.* I will thank you for your account of demurrage of their ships due by the government of *France*, and which you mentioned to me in the court house had been settled, and must be paid for. I am informed of the amount paid to your order under the *Louisiana* cession, but I have no account of the charges you may have paid thereon, nor of the commissions you are entitled to for your compensation." And also read in evidence, for the same purpose, the following letter from the defendant to the plaintiff, in answer to the foregoing one, dated the 27th of January 1809: "I have received your letter of the 25th instant. In answer refer you to the letter of the 20th June 1804, to Mr. *Gallatin*, Sec'ry. of the Treasury, for any claim you have against me under the *Louisiana* treaty of cession." And also, for the same purpose gave in evidence, that in the month of March or April 1807, during a trial between the defendant and the said *Hollins* in *Baltimore* County Court, in which *Hollins* claimed from the defendant, by way of set-off, the full amount of the sum allowed by the *French* government for demurrage on the *Adeline* and *Moggy* as aforesaid, the defendant did acknowledge and admit that he had received the aforesaid liquidated certificate for the sum allowed as aforesaid for demurrage, including the allowance as aforesaid for the said *Sidney* and *Pomona*, and had sold the said certificate at a discount of fifty per cent. as above set forth, and had received the purchase money, and that the parties respectively entitled to the said demurrage had a right to receive from him their respective proportions of what he had actually received, but alleged that it was hard for *Hollins* to exact from him the defendant the full nominal amount of the said certificate. The defendant then moved the court to direct the jury, that upon the whole of the evidence, if they believed the same, the plaintiff was not entitled to recover. Which direction the court refused to give. The defendant excepted; and the verdict and judgment being against him; he appealed to this court.

The cause was argued before CHASE, Ch. J. and JOHN-SON, and MARTIN, J.

*Williams,* for the Appellant. This suit is brought for money alleged to have been received by the defendant, of the *French* government, for the use of the plaintiff and *John Smith,* in the year 1803. It is stated in the record, that it was proved *John Smith* died in June 1805. The plaintiff, as the surviving partner, to avoid the plea of limitations, relied on an acknowledgment made by the defendant to him in the month of June 1809; and on another acknowledgment made by him to the plaintiff in the month of March or June 1807. It was contended, on the part of the defendant, in the county court, that these acknowledgments were not sufficient to defeat or prevent the operation of the plea of limitation; but that court decided otherwise. It is not meant to be contended here, that the acknowledgments of the defendant, as proved, might not have been sufficient, under a different form of declaration, and with other counts, to prevent the operation of the statute of limitations; but it is insisted that they were not sufficient to produce that effect in the present suit, and framed as is this declaration. The assumptions in the declaration are stated to have been made to *Samuel* & *John Smith,* in the life-time of *John,* and the suit is brought by *Samuel Smith* as surviving part-ner. The plaintiff, in order to let in the acknowledgment of the defendant before stated, ought to have adapted his counts to the nature of his proofs. This doctrine is incon-trovertibly shewn, and clearly illustrated, by the law in re-lation to acknowledgments made by or to an executor or administrator, *as such,* and assignees of bankrupts or insol-vents, *as such.* If a plaintiff declares on promises made by the intestate, and the defendant as administrator pleads the statute of limitations on which issue is joined, a promise made by the defendant as administrator will not be compe-tent evidence to resist the limitation, but the plaintiff should have declared on an *insimul computasset* with the defend-ant as administrator; that is, he should have declared that he accounted with the defendant as administrator of and concerning a debt due from the intestate to the plaintiff, and upon that accounting the defendant as administrator was found indebted to the plaintiff, and being so found in arrear the defendant as administrator promised to pay. So if the administrator is plaintiff, and declares on promises made to the intestate, and the defendant pleads limitations, a promise or acknowledgment by the defendant to the administrator within 3 years, will not take the case out of the statute; but the plaintiff ought to have declared that the defendant accounted with the plaintiff as administrator of and con-cerning a debt due from the defendant to the intestate, and upon that accounting the defendant was found indebt-ed, and being so found indebted promised to pay the plain-tiff as administrator. Or in the foregoing instances the declaration may run (in the first case put,) that the intes-

tate being indebted, the defendant as administrator promised to pay, or (in the second case put,) that the defendant being indebted to the intestate, promised to pay to the plaintiff *as administrator.* So here by analogy it should have been declared that the defendant accounted with the plaintiff, surviving partner of *John Smith,* of and concerning a debt due from the defendant to *Samuel* and *John Smith,* in the life-time of *John,* and being on that accounting found so indebted, he promised to pay to the plaintiff, surviving partner as aforesaid; or, that the defendant having received money for the use of the said *Samuel* and *John Smith,* in the life-time of *John,* promised to pay to the said *Samuel Smith,* surviving partner of *John,* since the death of *John.* It will be observed that *John Smith* having died in June 1805, and the suit having been instituted in July 1809, no promise or acknowledgment made by the defendant to *Samuel* and *John Smith,* in the life-time of *John,* could possibly have been made *within three years* of the institution of the suit, and the declaration is obliged to assert what was impossible *in fact,* so as to appear to take the case out of the statute of limitations, that the promises were made in August 1806 to *Samuel* and *John Smith,* although *John Smith* had at that date been dead 14 months. There are many authorities, which establish these positions. In 2 *Saund.* 63, d, *(note 6.)* it is laid down, (that which is a consequence of the position contended for,) that if the assignee of a bankrupt declare that the defendant was indebted to the bankrupt, and *promised the plaintiff, the assignee,* to pay him, the plea of the statute of limitations, that the action *did not accrue to the bankrupt* within 6 years, is no answer to the declaration, which states that the promises were made to the *plaintiff* assignee; and if it were a good plea *it would preclude the plaintiff from giving evidence of such promise.* So where a similar action was brought by the assignees of an insolvent debtor, for a debt due to the insolvent upon promises to pay the *plaintiffs, as assignees,* a plea of the statute, that the action did not accrue *to the insolvent,* is no answer to the declaration. This note refers to *Kinder vs. Paris,* 2 *H. Blk. Rep.* 561. In the same note to *Saunders,* 63 (f.) the law is laid down in a manner more precisely applicable to this case. It states, if in *assumpsit* by an executor all the promises are laid to be made *to the testator* in his life-time, the defendant pleads he did not promise within 6 years, and the plaintiff replies that the letters testamentary were sued out within 6 years of the institution of the suit, so that 6 years had not elapsed when the action accrued *to the plaintiff as executor, the replication* is bad; because *the statute run from the time the action accrued to the testator.* So where in *assumpsit* by an executor, on a contract made with the testator, all the promises in the declaration are laid to be made to the testator; and the defendant pleads the statute of limitation, the *plaintiff cannot in his replication set*

1819.
Barney
vs
Smith

*forth a promise made to himself, without being guilty of a departure, any more than he can in such case give evidence of a promise made to himself within* 6 *years, upon an issue joined on the plea of the statute of limitations.* Saunders refers to a long list of authorities of the highest character, and an intimation in *Heylin vs. Hastins, Carthew,* 471, to the contrary, which is asserted *not to be law.* So where to a declaration in *assumpsit* by the assignees of an insolvent debtor, for money due before his insolvency, stating all the promises to have been made *to the plaintiffs, the defendant* pleaded that he did not undertake and promise, in manner and form as the plaintiffs declared, he cannot *rejoin* that the cause of action first accrued *to the insolvent,* before the plaintiffs became assignees, and that 6 years had elapsed after the cause of action first accrued *to the insolvent,* for that rejoinder would be a plain departure from the plea. *Kinder vs. Paris,* 2 *H. Blk. Rep.* 562, *(note a).* Thus it will be seen by all these decisions, that it is necessary for the plaintiffs, who bring their suits in a representative character, to lay the promises and assumptions to be made to themselves, (where so much time has elapsed since the cause of action first accrued that the statute of limitations attaches,) if they rely on such promises or acknowledgments to take the cases out of the statute. Moreover, the authorities would never speak of promises and assumptions made *to the plaintiffs* who sue in a representative character, if they could maintain suits, and counteract the operation of the statute of limitations, by proving promises to have been made *to them in their representative character,* although the declaration should contain no other counts than upon promises made to the *original parties.* In 1 *Chitty's Plead.* 204, it is stated—"That an executor or administrator may declare *as such* for money paid in that character, and may join such count with counts on promises to the testator or intestate. So money had and received by the defendant to the use of the plaintiff as executor, on an account stated with him as executor of monies due and owing to the testator. or to the plaintiff as executor, may be joined with counts on promises to the testator or intestate." And *"where six years have elapsed since the death of the testator or intestate,* or it may on any other account *be material for the plaintiff to avail himself of a promise or acknowledgment since the death, counts should be introduced in the declaration on promises to the executor in that character, for otherwise, such promise or acknowledgment cannot be given in evidence."* *Ibid* 204, 205, 343. *Sarell vs. Hin,* 3 *East,* 409. *Hickman vs. Walker, Willes* 29. In pursuance of these principles, maintained by incontrovertible authorities, *Chitty,* in his 2 *vol.* 46, gives the forms of the counts proper in such cases, with reference to the instance of a *surviving partner* who sues for a debt due to him in that right. Before introducing the counts on promises to the surviving partner, *Chitty* expresses himself in these remarkable words, shewing the appli-

cation of the principles in cases of executors or administrators to cases of *surviving partners.* "If the debt be considerable, *or the deceased partner has been dead six years,* or it may on any other account be advisable for the plaintiff *to avail himself of a promise or acknowledgment to him since the death* of his partner, insert the counts," &c. and referring to *Sarell vs. Wine,* 3 *East,* 409. In *Hickman vs. Walker, Willes,* 29, the opinion of the court concludes in these words: "Because all the promises in the declaration are laid to be made to the testator, an executor *cannot give evidence of the promise to himself* within six years; and if he cannot, setting forth a promise to himself in his replication, as the executors have done in the present case, *is a departure in pleading,* and for that reason also the replication is not good." In *Secar vs. Atkinson,* 1 *H. Blk. Rep.* 105, the court say, it is a common manner of declaring against executors and administrators, to save the statute of limitations, that *executors and administrators promised themselves* to pay, &c. In *Beard vs. Cowman,* 3 *Harris & M'Henry,* 153, it was decided by the general court, that *evidence* that the executor had promised to the plaintiff executor, *would not support a declaration on promises to the testator.* The forms of counts on promises by executors and administrators in 1 *Harris's Ent.* 161, 162, 179, show the practice in this state. In *Tom vs. Goodrick,* 2 *Johns. Rep.* 213, it was held that the promise must be stated to have been made by the partner living at the time, alone; if stated to be by the deceased partner, and his survivors, it will be fatal. 3 *Chitty's Plead.* 19, 20, gives the forms of declarations against a surviving payee, and a surviving maker of a promissory note.

As the objections urged against the opinion of the court below in the *second* bill of exceptions, are considered to be fatal to the plaintiff's recovery, it is deemed wholly unnecessary to say any thing upon the *first* bill of exceptions.

*Winder,* for the Appellee. The *first* bill of exceptions seems to be abandoned by the appellant's counsel; but to the *second,* it was urged that proof was admitted which does not apply to the issue. It has been decided that it may be left to the jury to ascertain whether a promise had been made so as to take the case out of the act of limitations. 1. In this case there was sufficient proof to take the case out of the statute. It was not necessary that it should be an express promise. *Lloyd vs. Maund,* 2 *T. R.* 762. *Lawrence vs. Worrall, Peake's N. P.* 93. *Ball. on Lim.* 188, 190.

2. The principal question is, whether a promise or acknowledgment made since the death of one of two partners, can sustain a case where the promise is laid to have been made to both? No authority has been produced to show that an action like the present cannot be maintained. If it could not, there must be such cases in the books. The

practice of declarating on promises by executors, &c. seems to have been only applicable as to executors, administrators and assignees, of insolvents, and not to actions by surviving partners. Executors, &c. appear in a representative character, having nothing to do with the cause of action. But it is different as to a surviving partner, where the promise to him revives the original claim. The right of action is the same, and the surviving partner enforces the right, and he is not in the predicament of an executor, &c. who comes in by assignment, &c. or by transfer of law, as where a promissory note by endorsement is transferred, and the endorsee receives the legal right. Suppose an action on a promissory note endorsed by A to B, and the act of limitation is pleaded—an acknowledgment to A would enable B to recover. An acknowledgment by the party restores the right of action which was before taken away. No new consideration is necessary to take it out of the statute of limitations—a simple acknowledgment revives the original consideration, and restores the party to his original right. The statute does not extinguish the debt, but bars the remedy. *Ball. on Lim.* 188. In the case before the court the plaintiff was the original creditor, and the whole interest at law devolved on him. The acknowledgment relied on is, that the defendant received the money for the plaintiff and *J. Smith*, that admission removes the bar of the act of limitations. The cases cited by the counsel for the appellant, relates to executors, administrators and assignees, except *Tom vs Goodrick*, 2 *Johns. Rep.* 213, which was a case *against* a surviving partner, and to involve a person as a partner, his deceased partner must be alive at the time when the debt was created. It is incumbent on the counsel for the appellant to show that the cases of executors, administrators and assignees, apply to a surviving partner. The precedents in *Chitty* are no authority, and he only advises the change out of abundant caution.

*Pinkney*, in reply. There are two questions—1. The sufficiency of the acknowledgment without reference to the pleadings. 2. Its sufficiency in connexion with the pleadings. As to the *first*, the acknowledgment is not sufficient if the pleadings are correct. The statute of limitations is considered almost as a dead letter. The courts seem to interpret it so as to evade its operation. They have said that an acknowledgment will take the case out of the statute, and although it was not a new promise, yet it implied a new promise. The tide is now setting the other way. Courts are now more strict, and will not go further to evade the statute, and was the question to be decided now for the first time, a different rule would be established. 2. The acknowledgment is not sufficient under the pleadings. What was the issue on the plea of limitations? It was that the defendant did assume within three years, in manner and form as stated in the plaintiff's declaration,

which was that he assumed to pay the plaintiff and *J. Smith*, in the life-time of *J Smith*. If it had been expressly proved that the defendant had promised to pay the plaintiff, would that be the promise as laid in the declaration, and as the plaintiff took it upon himself to prove? But no express promise is proved—there was simply an acknowledgment that a debt did exist. It was an implied promise, and the plaintiff was bound to prove that which he would be bound to prove if the promise, on which the cause of action is founded, was expressly proved. The plaintiff was not in a better situation than if the promise had been made more than three years. A promise to a dead man is of no effect. A promise to the plaintiff cannot by relation be a promise to *S.* and *J. Smith*; if it can, why cannot a promise to an executor by relation be a promise to the testator? Here the declaration counts on one promise, and the proof is as to a different promise. This will apply as well in the case of an executor as of a surviving partner. The surviving partner sues no more in his own right than an executor does. He comes in a representative character, although he has an interest. He does not claim to be entitled exclusively for himself, but as a surviving partner representing the firm. If he recovers, he recovers under an accountability in like manner as an executor. The representatives of the deceased partner may call on him and make him account. The predicament of a surviving partner, in the eye of reason, is identically the same with that of an executor. The doctrine of relation is wholly inadmissible, that the acknowledgment should relate to the original promise. Here a promise is laid as made to *S.* and *J. Smith*, which the defendant denies; but if made, it was not made to *S.* and *J. Smith*, within three years. The proof is that the defendant acknowledged the debt to *S. Smith*, and that when the acknowledgment was made *J. Smith* was dead. Is this maintaining the issue joined? The case cited are of executors, &c. and that where a promise is made to the executor, there must be a count on that promise to prevent limitation from barring. In *Green vs. Crane*, 2 *Ld. Raym.* 1101, the defendant *owned* the debt to the executor, and *promised him* to pay the debt which was due to the testator. There was no count on the promise to the executor; and on the plea of limitations, it was held that the promise was not within the issue, and could not be given in evidence. The case of an executor may be distinguished from that of a surviving partner in point of fact, but not in principle. They are both in representative characters; and if not in representative characters, they are not the persons to whom the promise was made. A promise made to one man is not a promise made to two. But it is said, that we have produced no case directly in point. It may be asked, why no case is produced showing that the decision has been otherwise? It may be answered, that ever since the question was settled as to executors, &c. the case of a surviving

partner has been considered as settled, and the forms, as to surviving partners, have been made to conform to those adopted in cases of executors, &c. Elementary writers are to be regarded, and *Chitty*, if alone, would be high authority; but without his authority the case is clear.

CHASE, Ch. J. delivered the opinion of the court. The court are of opinion, that the act of limitations does not operate to extinguish the debt, but to bar the remedy. The act of limitations is predicated on the principle, that from length of time a presumption is created that the debt has been paid, and that the debtor is deprived of his proof by the death of his witnesses or the loss of receipts. It is the design of the act of limitations to protect and shield debtors in such a situation; and consistent with this principle, and this view, the decisions have been made, that the acknowledgment or admission of the debtor will take the case out of the act of limitations, because if the money is still due and owing, the defendant has not suffered from lapse of time, nor has any inconvenience resulted to him therefrom.

The case of a surviving partner is distinguishable from that of an executor. An express promise made to an executor creates an *assumpsit* to him, and is founded on the antecedent consideration of a debt due to the testator; and a count in the declaration must be framed on it, and the proof must correspond with and be adapted to it. The money, when recovered, will be assets in the hands of the executor, and he will be accountable for it. A surviving partner has a right to all the effects belonging to the partnership, and to receive, sue for and recover, all the debts due to the partnership. The right and remedy are united in him, the original promise made to him, and his deceased copartner, still exists, and the right of action with the remedy survived to him. The acknowledgment to the surviving partner saves and preserves the remedy in the survivor, and avoids the bar by the act of limitations. It does not create a new *assumpsit*, but is a saving of the remedy on the original promise. The surviving partner is accountable to the creditors of the firm, and to the representatives of the deceased partner.

The court are of opinion, that the judgment of the court below be affirmed on both bills of exceptions.

JOHNSON, J. This was an action on the case for money had and received by the defendant below, (the appellant,) for the use of the plaintiff, in which the plaintiff recovered.

The defendant pleaded the general issue, and the act of limitations, on which issues were joined. Two questions arise on the exception relied on. *First*, was the evidence sufficient to establish the claim on the general issue? On the argument this ground was not much relied on by the appellant; and on an examination of the proof produced by the plaintiff, the court are satisfied that it was fully adequate to sustain the plaintiff's claim on the general issue.

1819.

Barney
vs
Smith

The *second* question arising is, whether such declarations or admissions made by the defendant to *Samuel* and *John Smith*, within three years before a suit brought by them, would, if made to *Samuel* after the death of *John*, enable *Samuel*, the survivor, to recover the partnership debt?

The act of limitations was never intended to prevent the recovery of debts really due, but to protect persons from old claims when the evidence of their discharge, from length of time was supposed to have been lost.

The courts of justice in *England*, and in this state, considering, and correctly considering, such to have been the object of the statute, have availed themselves of any declarations or admissions on the part of debtors to remove the bar to the recovery presented by the act of limitations.

The decisions of the courts, on the offers and admissions of debtors, made within the time presented by the act of limitations, that the case was taken out of that act, do not go on the ground that a new cause of action was thereby created, or that a new promise was made to pay the old debt. A promise made within the period prescribed by the act of limitations, will authorise a recovery of the original debt, and in that instance, and in that alone, would the jury be justified in finding a verdict for the plaintiff on the issue joined on the act of limitations, if the position contended for on the part of the appellant was correct, that it is more a question of fact than of law; and that therefore a promise made to *Samuel Smith*, the surviving partner of *John Smith*, could not support the issue alleging such a promise to have been made to *Samuel* and *John Smith*.

If nothing but a promise to pay could revive a debt, or remove the act of limitations, then it would seem to follow that such promise must have been made to the plaintiffs themselves, and a promise to one partner, after the death of the other, would not support the issue on the part of the plaintiff when the act of limitations was pleaded. On the contrary, if a promise to pay is not indispensably necessary to support that issue, then may the plaintiff recover, although the fact of the promise to pay within the prescribed time is not made to appear to the jury.

It is most unquestionably established that an acknowledgment of the debt, an offer to come to a settlement, or to refer to arbitrators, will take the claim out of the act of limitations. Now an acknowledgment of the debt is not a promise to pay, nor is an offer to come to a settlement, or to refer the matter in contest to referrees, a promise to pay the claim, nor can they amount to more than this, and that by implication of law, to pay the sum ascertained to be due on the settlement, or the sum awarded. Yet all those acts will remove the bar presented by the act of limitations; for the admission of the debt removes all doubts as to its having been discharged, and the offer to come to a

settlement or reference, impliedly admits the party to be in possession of the evidence and documents necessary for such adjustments.

But it is contended, on the part of the appellant, that before the surviving partner can recover on promises or admissions made to him, he must insert a special count relying on the promise made to himself; and it is contended, on the part of the appellant, that an executor could not recover a debt due to the deceased, relying for such recovery on a promise made to the executor to take it out of the act of limitations, without a special count on such promise, and therefore the surviving partner, before he can recover, must also specially declare on the promise made to him.

It appears to me that the decisions made in the case of executors must have been founded on a supposed necessity that the proof should correspond with the issue, to wit, the promise to the deceased. The case before the court is not that of an executor suing to recover a debt due to the testator, relying on a promise made to himself, without declaring on it, to avoid the act of limitations. We have seen, that the bar presented by the act of limitations may be removed without a new promise, and that any declarations made by the defendant, from which it is to be inferred that the demand is just, or that he is in possession of the documents to come to a settlement, are sufficient to remove the act of limitations; I am therefore of opinion that the admissions made in this case, although after the death of *John Smith*, were sufficient on the issue joined on the act of limitations.

JUDGMENT AFFIRMED.