## JAMES *v.* THURN

[No. 324, September Term, 1971.]

*Decided May 15, 1972.*

The cause was argued before HAMMOND, C. J., and

BARNES, McWILLIAMS, FINAN,▊ SINGLEY, SMITH and DIGGES, JJ.

*Barry H. Helfand* for appellant.

*Vincent L. Gingerich* for appellee.

FINAN, J.,* delivered the opinion of the Court.

In the years 1965 and 1966 the defendant-appellant, Peter James, executed and delivered five (5) promissory notes totaling $3,700.00 payable to the order of the plaintiff-appellee, Vincent W. Thurn, each note becoming due and payable six (6) months after date. The notes were not paid by the defendant as they became due and they represent the obligation upon which the plaintiff's claim is predicated.

On May 27, 1969, the plaintiff, by letter, made demand upon the defendant for the payment of the money due and set forth certain proposals for payment. One of the proposals made by the plaintiff was that he would accept from the defendant within a period of time ending June 10, 1969, shares of Photo Magnetic Systems, Inc. stock equivalent in value to the money owed him in lieu of cash a full payment of the promissory notes then past due. The defendant was president of Photo Magnetic Systems, Inc. This proposal was accepted by the defendant on May 28, 1969, and the defendant agreed to forthwith proceed to transfer 580 unregistered shares of the stock to the plaintiff. However, the defendant did not transfer the stock as promised and required by the proposal of the plaintiff. At this juncture it is most significant to note that when the defendant accepted the plaintiff's proposal of payment in stock rather than cash, he did so in a written acknowledgment of the proposal under date of May 28, 1969, and referred to the existing promissory notes by reference.

When the plaintiff did not receive the stock from the defendant as promised, the plaintiff telephoned the defendant and attempted to see the defendant to obtain the promised stock, to no avail.

The defendant testified that on May 29, 1969, he delivered his stock certificate with instructions to a member of the law firm representing Photo Magnetic Systems, Inc. to cause 580 shares of his unregistered stock to be transferred to the plaintiff. The defendant testified that the stock was not transferred because the plaintiff failed to execute an investment letter. However, the plaintiff had no knowledge of the need to execute such a letter and received no notification from the defendant concerning this requirement.

The defendant made no personal effort to see that the stock was transferred to the plaintiff until July 14, 1969, when he mailed a letter to the plaintiff which was not received by the plaintiff. The stock was not transferred to the plaintiff and to the date of the hearing remained in the possession of the defendant or his agent.

On February 26, 1970, the plaintiff, through his attorney, filed suit and a motion for summary judgment in the Circuit Court for Montgomery County. The defendant was summoned to the May Return Day which was May 4th and the time for pleading expired 15 days thereafter. The defendant did not file any plea to the declaration or opposition to the motion for summary judgment within that time. On July 31, 1970, the court granted the motion for summary judgment and entered judgment for the sum of $4,612.00, plus interest from that date.

On August 31, 1970, an attorney (not present counsel) on behalf of the defendant, filed a motion to set aside the judgment, alleging "(1) that the defendant was under the apprehension that he had engaged counsel * * * to file opposition and subsequently found no answer was filed and (2) he believes he is entitled to his day in court to assert proper defenses." This motion was denied by

the court on the basis that counsel had not complied with the Clients' Security Fund Rule of the Court of Appeals of Maryland, Rule 1228.

On September 22, 1970, another motion to set aside the judgment was filed by present counsel on behalf of the defendant. This motion was denied by the court and thereafter a bill of exceptions was filed requesting that the decision be reviewed by the judges of the Sixth Judicial Circuit *in banc*. The case was remanded back to former Judge Shook by the court *in banc*.

Again, on March 19, 1971, the trial judge allowed the judgment to stand. Thereafter a second bill of exception was filed requesting review by the judges of the Sixth Judicial Circuit *in banc*.

On June 16, 1971, the court *in banc* set aside the judgment and gave the defendant 15 days in which to plead to the declaration and his opposition to the motion for summary judgment.

On June 28, 1971, the defendant, through his attorney, filed pleas to the declaration, including the special plea that the action was barred by limitations. Motion was filed by the plaintiff to strike the plea of limitations on the basis that it was not filed within the time required by Rule 307.

The case was tried on September 14, 1971, before Judge Samuel W. Barrick. On September 27, 1971, he issued an opinion and order granting judgment in favor of the plaintiff against the defendant in the amount of $4,612.-00, plus interest at 6% from July 31, 1970, which was a judgment in the same amount as granted by Judge Shook almost 13 months previously.

On appeal the defendant relies primarily on the defense of limitations or in the alternative that he had made delivery of the unregistered stock in Photo Magnetic Systems, Inc. and thus discharged his obligations pursuant to the offer made by the plaintiff in his proposal of May 28, 1969. The plaintiff parries this with the arguments that: (1) The motion filed by the defendant's for-

mer attorney to set aside the judgment was a nullity as he had neglected to pay his dues to the Clients' Security Trust Fund, as required by Rule 128 f, and Rule 2, and that this is a condition precedent to the practice of law in Maryland; (2) That the defendant by agreeing to transfer the stock to the plaintiff on May 28, 1969, in consideration of the plaintiff's release and discharge of the obligations represented by the notes, acknowledged the debt and was thus foreclosed on the defense of limitations; and (3) The defendant failed to make delivery of the stock pursuant to the agreement.

We do not find it necessary to consider the plaintiff's argument regarding the Clients' Security Fund in order to resolve this case and without passing on the validity of that contention we will confine ourselves to a discussion of the issues of limitations and the delivery of the stock.

On May 28, 1969, the defendant replied to the plaintiff's offer to accept the stock in lieu of cash in settlement of the 1965 and 1966 notes by a written acknowledgment which stated:

\* \* \*

"I, Peter James, agree forthwith to transfer 580 unregistered shares of the common stock of Photo Magnetic Systems, Inc. in full consideration for Mr. V. W. Thurn's release and discharge of the obligations referred to above.

Mary L. Long/s           Peter James/s"
Witness

We think that this writing clearly acknowledged the existence of the debt and revived the remedy insofar as those notes which had come due more than three years prior to the date of the written acknowledgment were concerned and tolled the statute of limitations as to those upon which limitations had not yet run. See *Hall v. Barlow*, 260 Md. 327, 336-339, 272 A. 2d 386 (1971); *Brosius Development Corp. v. City of Hagerstown*, 237

Md. 374, 380, 206 A. 2d 571 (1965) ; *Doughty v. Bayne,* 222 Md. 361, 364, 160 A. 2d 609 (1960).

Addressing ourselves to the issue of the transfer of the unregistered stock we agree with Judge Barrick's holding that the stock was never transferred to the plaintiff as contemplated by the parties.

In arguing his position on this point the defendant contends that on May 28, 1969, by letter, he instructed the law firm representing Photo Magnetic Systems, Inc. to transfer the 580 shares of unregistered stock to the plaintiff, that he had endorsed a "stock power" and had had his signature guaranteed by an officer of the Suburban Trust Company, and that he also personally delivered the certificates to the corporate secretary of Photo Magnetic Systems, Inc. At still another point in his testimony he states that the certificate reached the Comput-A-Credit Company, a registered stock transfer company. He claims that he had thereby divested himself of possession and control over the stock. He further testified that he had a copy of his instructions for the transfer mailed by the Secretary of Photo Magnetic Systems, Inc. to the plaintiff.

The defendant's legal counsel then informed him that before transfer of the unregistered stock could be effected that the plaintiff would have to sign an investment letter, that is, a statement to the effect that he was acquiring the stock for investment purposes and not for resale as is the practice where unregistered stock is concerned.[1] The defendant testified that he then told his personal secretary to so inform the plaintiff. He further testified that he advised the plaintiff as to the necessity for the investment letter before transfer could be completed. However, on cross-examination the defendant admitted that he had never personally contacted the plaintiff regarding the investment letter.

---

1. The requirement of an "investment letter" is actually for the protection of the seller. See Maryland Code (1971 Repl. Vol.) Art. 32A, § 26 (b) 9 and Securities Act of 1933 (as amended, H. R. 5480) Sec. 4 (2).

By contrast the plaintiff testified that some period of time after May 28, 1969, when he had not received the stock, he attempted to communicate with the defendant by driving to his home and by telephone calls, but could not reach him. Sometime thereafter he did have a conversation regarding the transaction with the defendant. He further testified that he had never received any correspondence from the defendant or any agent or broker on the defendant's behalf regarding an investment letter and that although he had some idea about the nature of unregistered stock, he had no idea as to what an investment letter was and at no time did the defendant or anyone on his behalf explain the nature of one to him or offer an investment letter for his signature. At the time of the hearing before Judge Barrick the stock had never been transferred to the plaintiff nor had any money been paid to him on the obligations. The trial court chose to believe the plaintiff's version of these negotiations and certainly his testimony appears from the record to be more positive than that of the defendant. We do not think that Judge Barrick was clearly in error in respect of his findings of fact, or erred in his interpretation of the law.

One cannot gainsay the fact that the defendant was president of Photo Magnetic Systems, Inc. and should have had a better knowledge of the significance of unregistered stock and the need for an investment letter incident to its transfer, than the plaintiff. The defendant also obtained opinion of counsel regarding this and it is our opinion that if he had desired to take advantage of the plaintiff's offer to accept the stock in lieu of cash he should have immediately obtained the form of an investment letter and presented it to the plaintiff for his signature. The offer of settlement instituted by the plaintiff demonstrates that he was willing to settle this indebtedness and would have signed an investment letter as a part of the requirement for transfer. The record indicates that the defendant failed to deliver to the plain-

tiff the document necessary to complete the transfer and ignored the plaintiff after agreeing to transfer the stock.

The defendant also relies on Code (1964 Repl. Vol.) Art. 95B, the "Uniform Commercial Code," (UCC), Sections 1-201 (14), 8-313 (1) (d) and 8-314 (1) (a). He contends that under Section 8-313 (1) (a) of the UCC that the plaintiff should be deemed to have constituted Photo Magnetic Systems, Inc., as the person or agent to acquire possession of the stock for him, and that under Section 8-314 (1) (a) the defendant as seller fulfilled his duties regarding delivery when he placed the certificate in the hands of the selling broker. He would cast in this latter role his attorney, the corporate secretary of Photo Magnetic Systems, Inc., or Comput-A-Credit Company, a registered stock transfer company which apparently kept the stock transfer records of Photo Magnetic Systems, Inc., although this latter relationship is not as clear from the record as it might be. The short answer to these arguments lies in the fact that there is nothing in the testimony which would justify the designation of the defendant's counsel, the corporate secretary of Photo Magnetic Systems, Inc., or Comput-A-Credit Company as a broker. The record is equally devoid of any evidence that would justify the conclusions that the plaintiff had appointed any individual or corporation as his agent to acquire or accept possession of the stock for him, nor did any of these entities acknowledge holding the stock for the plaintiff. Additionally, we must keep in mind that all of the efforts on the part of the defendant to transfer the stock were bottomed on the admonition from the defendant's counsel that before transferring the stock or delivering it to the plaintiff he should obtain an investment letter from him. This was never accomplished. We do not mean to imply by this that technical delivery or transfer of unregistered stock cannot under certain situations be accomplished without an investment letter, but under the facts of this case the defendant and those with whom he communicated regarding the delivery of the stock were holding up matters until the investment

letter was obtained. The fact of the matter remains that the plaintiff, as of the time of the hearing below, had never received delivery of the stock.

The proposal under which the plaintiff agreed to accept the stock in lieu of cash was that delivery be made to him of the stock by June 10, 1969, and absent such a delivery, the obligation due the plaintiff was to be paid in cash. Accordingly, the trial court properly awarded a monetary judgment to the plaintiff.

*Judgment affirmed, appellant to pay costs.*