RICHARD LEE POTTERTON ET UX. *v.* THE RYLAND
GROUP, INC.

[No. 44, September Term, 1979.]

*Decided January 20, 1981.*

*Motion for reconsideration filed February 19, 1981; denied
March 2, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ., and reargued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

Argued and reargued by *Malcolm B. Kane* for appellants.

Argued and reargued by *Timothy E. Welsh* for appellee.

DAVIDSON, J., delivered the opinion of the Court.

On 3 January 1973, the petitioners, Richard Lee and Mary G. Potterton (buyers), entered into a contract with the respondent, the Ryland Group, Inc. (seller), to purchase a house to be built by the seller. The contract expressly provided that the seller would construct the house "in a workmanlike manner substantially in accordance with plans and specifications." Settlement took place on 26 December 1973.

At various times before and after settlement, and as late as 6 December 1974, the buyers discovered construction defects that they reported to the seller. Approximately seven months later, on 10 July 1975, the seller sent a letter to the buyers that said in pertinent part:

> "In response to your request for an answer to your letter of December 21, 1974 and per our discussion July 9, 1975 I will list all the items that require corrections by Ryland Homes.
>
> . . .
>
> The other items on your list do not require any action from Ryland Homes. Work orders will be issued to correct the items above.[1] These items should be corrected within the next four weeks."

In that letter the seller agreed to correct the 35 listed items. Some of these repairs were not made.

---

1. Omitted from the text of the 10 July 1975 letter is the list specifying the 35 items requiring correction.

In a subsequent letter dated 5 January 1976, the seller agreed to repair 11 items if the buyers would sign a copy of the letter that contained the following language:

> "Subsequent to the completion of the mentioned items and the fact that your house is beyond the warranty period, we will not be doing any further work on your home."

The buyers did not sign a copy of the letter, and the repairs were not made.

On 20 December 1976, in the District Court of Maryland sitting in Howard County, the buyers filed a Statement of Claim alleging that the seller had breached its warranty by failing to construct the house "in a workmanlike manner" and breached a duty owed to the buyers by constructing the house in a negligent and careless manner. The buyers requested that the case be docketed both as an action in contract and tort. The District Court found that the contract embodied both express and implied warranties, that the two-year limitation period contained in Md. Code (1974) § 10-204 (c) of the Real Property Article barred the action, and that the seller's letters of 10 July 1975 and 5 January 1976 did not extend the limitation period.

The Circuit Court for Howard County affirmed. In addition, it determined that because there was no duty independent of the contract, imposed by law upon the seller, a cause of action in tort did not exist for the negligent performance of the contractual obligation.

The buyers filed a petition for a writ of certiorari that we granted. The petition raised essentially three questions:

> 1. Whether an action for the breach of express and implied warranties pertinent to newly constructed dwellings is governed by the three-year limitation period contained in Md. Code (1974, 1980 Repl. Vol.) § 5-101 of the Courts and Judicial Proceedings Article [2] or by the two-year limitation

---

2. § 5-101 provides:

"A civil action at law shall be filed within *three years* from the date it accrues *unless another provision of the Code provides a*

period contained in § 10-204 (b) (1) and (c) of the Real Property Article.[3]

2. Alternatively, if the two-year limitation period were to govern, whether the seller's letters concerning repair of certain defects extended the limitation period.

3. Whether the buyers have a cause of action in tort for the negligent performance of a contractual obligation, which is governed by the three-year limitation period contained in § 5-101 of the Courts and Judicial Proceedings Article.

The case was argued on 30 October 1979 and reargued on 5 November 1980. At the reargument, in response to questions from the Court, the buyers indicated that they were willing to limit their claims to the repair of the remaining defective items listed in the seller's 10 July 1975 letter. In addition, the buyers indicated that if it were held that their contract claim was not barred by limitations, the question of the existence of a cause of action in tort need not be determined.

In our view, the 10 July 1975 letter extended the limitation period beyond 20 December 1976, the date on which the action was filed, regardless of whether the two-year limitation period contained in § 10-204 (c) of the Real Property Article or the three-year limitation period contained in

---

*different period of time* within which an action shall be commenced." (Emphasis added.)

**3.** § 10-204 (b) (1) and (c) provides in pertinent part:

"(b) *Expiration of warranty.* — Unless an express warranty specifies a longer period of time, the warranties provided for in this subtitle expire:

(1) In the case of a dwelling completed at the time of the delivery of the deed to the purchaser, *one year* after the delivery or after the taking of possession by the purchaser, whichever occurs first. . . .

. . .

(c) *Limitation of actions. — Any action arising under this subtitle shall be commenced within two years after the defect was discovered or should have been discovered* or within two years after the expiration of the warranty, whichever occurs first." (Emphasis added.)

§ 5-101 of the Courts and Judicial Proceedings Article applies. Therefore, it is unnecessary to decide which limitation period applies. In addition, because, in our view, the buyers' contract claim was not barred by limitations, it is unnecessary, under the circumstances here, to decide whether the buyers have a cause of action in tort.

In Maryland, either an express unconditional promise to pay a subsisting debt, a conditional promise to pay such a debt if there is evidence to show that the condition has been performed, or an acknowledgment of such a debt from which a promise to pay may be implied, removes the bar created by the statute of limitations and revives the debt. *Nardo v. Favazza,* 206 Md. 122, 128-29, 110 A.2d 676, 679 (1955); *Crawford v. Richards,* 197 Md. 284, 293, 79 A.2d 143, 145 (1951); *Oliver v. Gray,* 1 H. & G. 204, 216 (1827). However, in order for an acknowledgment to remove the limitation bar, the acknowledgment must be "unaccompanied by any qualification or declarations, which, if true, would exempt the defendant from a moral obligation to pay." *Brosius Dev. Corp. v. City of Hagerstown,* 237 Md. 374, 380, 206 A.2d 571, 574 (1965); *Oliver,* 1 H. & G. at 216-17. "[T]he acknowledgment must be a clear, distinct, and unqualified admission." *Mayor of Federalsburg, Md. v. Allied Contractors, Inc.,* 275 Md. 151, 160-61, 338 A.2d 275, 282, *cert. denied,* 423 U.S. 1017, 96 S. Ct. 452 (1975); *Owings v. Dayhoff,* 159 Md. 403, 415, 151 A. 240, 245 (1930). *See* 1A *Corbin on Contracts* §§ 214-16 (1963).

The rationale underlying this principle was articulated in several early cases. In *Barney v. Smith,* 4 H. & J. 485, 495 (1809), this Court said:

"[T]he Act of Limitations does not operate to extinguish the debt, but to bar the remedy. The Act of Limitations is predicated on the principle, that from length of time a presumption is created that the debt has been paid, and that the debtor is deprived of his proof by the death of his witnesses or the loss of receipts. It is the design of the Act of Limitations to protect and shield debtors in such a situation; and consistent with this principle and

this view, the decisions have been made, that the acknowledgment or admission of the debtor will take the case out of the Act of Limitations, because if the money is still due and owing, the defendant has not suffered from lapse of time, nor has any inconvenience resulted to him therefrom."

Similarly, in *Oliver,* 1 H. & G. at 218, this Court said:

"The Act of Limitations, according to the received construction, proceeds upon the supposition, that from length of time the debt is paid, and was only intended to protect a party where the presumption arising from lapse of time is, either, that the debt has been discharged, or never existed, and not to protect him from a debt acknowledged by himself to be still due and unpaid, with no other excuse for not paying it than the supposed bar created by the Act. When, therefore, a party admits the debt to be due, but standing upon the Act of Limitations alone, in the same breath refuses to pay it, he admits a case, to which the Act, according to its spirit and reason, does not apply, under the interpretation given to it, and his refusal cannot avail him. But the continuing existence of the debt continues and carries with it the implied assumpsit that the law raises, which is not rebutted by his refusal to pay. Hence the very common use in the books of the terms 'takes the case out of the Statute of Limitations;' that is, that it is a case not embraced by the statute."

These cases establish that the statute of limitations was designed to protect debtors against loss of proof of payment caused by the lapse of time and was not designed to protect debtors who admit an obligation to pay.

The principle that a promise or acknowledgment of a subsisting debt removes the limitation bar has been consistently applied to a variety of factual situations. In *James v. Thurn,* 265 Md. 501, 502-06, 290 A.2d 490, 491-93 (1972), the debtor had executed promissory notes that he failed to pay

when due. Subsequently, the debtor agreed to discharge the debt by transferring certain shares of common stock to the creditor rather than by paying cash. When the debtor failed to transfer the stock, the creditor sued. The debtor raised the statute of limitations as a defense. The Court of Appeals held that the debtor's written agreement "clearly acknowledged the existence of the debt and revived the remedy." *James,* 265 Md. at 505, 290 A.2d at 492. This case establishes that when there is a subsisting agreement to pay money, an acknowledgment of the debt coupled with a promise to perform an obligation other than the payment of money removes the limitation bar.

In *Hall v. Barlow,* 260 Md. 327, 328-39, 272 A.2d 386, 387-93 (1971), the debtor agreed to purchase property from the creditors. A portion of the purchase price was to be paid by a promissory note guaranteed by the endorsement of a particular corporation with which the debtor was associated. At settlement, the note was not endorsed by the corporation. Subsequently, the debtor warranted that the promissory note guaranteeing payment would be endorsed by the corporation. When the debtor failed to obtain the corporation's endorsement and, therefore, its guarantee on the note, the creditor sued. The debtor raised the statute of limitations as a defense. The Court of Appeals held that the debtor's warranty constituted "the acknowledgment of the previous obligation, which revives the remedy in the instant case." *Hall,* 260 Md. at 339, 272 A.2d at 393. This case establishes that when there is a subsisting agreement to perform an obligation other than the payment of money, the acknowledgment of that obligation coupled with a promise to perform that obligation removes the limitation bar.

Applying these principles to the instant case produces a clear result. Here the seller agreed to construct a house "in a workmanlike manner substantially in accordance with plans and specifications." Before and after settlement, and as late as 6 December 1974, the buyers discovered construction defects that they reported to the seller. Approximately seven months later, in a letter dated 10 July 1975, the seller promised to correct 35 defective items within the next four weeks. Some of these repairs were not made.

In a letter dated 5 January 1976, the seller indicated that it would not repair the remaining defective items. The buyers filed suit on 20 December 1976, approximately 17 months after the 10 July 1975 letter.

Here the record shows that there was a subsisting agreement under which the seller was to perform an obligation other than the payment of money. The 10 July 1975 letter consisted of both an acknowledgment that the seller had not properly performed its obligation and an express unconditional promise to perform properly. The seller's 5 January 1976 letter does not impair the effectiveness of its previous express unconditional promise.[4] *Brosius Dev. Corp.*, 237 Md. at 381, 206 A.2d at 574-75.

Under these circumstances, the bar created by the statute of limitations was removed, and the limitation period was extended. Because the buyers filed suit on 20 December 1976, approximately 17 months after the 10 July 1975 letter, it is immaterial whether the two-year limitation period contained in § 10-204 (b) (1) and (c) of the Real Property Article or the three-year limitation period contained in § 5-101 of the Courts and Judicial Proceedings Article is applicable. The suit was timely filed. Accordingly, we shall reverse and remand for further proceedings in accordance with this opinion.

> *Judgment of the Circuit Court for Howard County reversed.*
>
> *Case remanded to that court with directions to reverse the judgment of the District Court of Maryland sitting in Howard County and to remand the case to that court for further proceedings in accordance with this opinion.*
>
> *Respondent to pay costs.*

---

**4.** The construction of an unambiguous contract is a matter of law for the court to determine. H. & R. Block, Inc. v. Garland, 278 Md. 91, 97, 359 A.2d 130, 133 (1976); Cook v. Carroll, 6 Md. 104, 111 (1854). Because, in our view, the 10 July 1975 letter was an unambiguous contract, the rule that "the judgment of the lower court will not be set aside on the evidence unless clearly erroneous" is not applicable. Md. Rule 886.