JAMES *v.* GOLDBERG

[No. 114, September Term, 1969.]

*Decided February 3, 1970.*

*Motion for rehearing filed February 16, 1970; denied March 2, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SMITH and DIGGES, JJ.

*Leonard Z. Bulman* for appellant.

*Benjamin B. Brown* for appellee.

BARNES, J., delivered the opinion of the Court.

The appellant, Peter James, as plaintiff below filed an action at law in the Circuit Court for Montgomery County against the appellee, Yale L. Goldberg, defendant below, to recover in three counts (1) for breach of contract, (2) for fraud and deceit and (3) for malicious abuse of process allegedly arising out of a written assignment of the defendant Goldberg's lease of office space in the property, 8730 Georgia Avenue, Silver Spring, Montgomery County with the landlord, Fenwick Associates. The lower court (Moorman, J.), at the end of the plaintiff's case, directed a verdict in favor of the defendant upon all three

counts. From a judgment for costs in favor of the defendant, the plaintiff took a timely appeal. The question before us is whether or not the trial court erred in directing the verdict for the defendant on the respective three counts.

In considering the evidence when a motion for a directed verdict for the defendant is sustained, we consider the evidence and all reasonable inferences deducible from them in the light most favorable to the plaintiff. *Slutter v. Homer*, 244 Md. 131, 223 A. 2d 141 (1966).

The plaintiff James testified that on or about October 9, 1965, while looking for office space to locate the main offices of his newly formed Comput-A-Phone system business which he called "Photo Magnetic Systems," he went to the property 8730 Georgia Avenue and talked to Marvin Brown, the managing agent for the building, who referred him to the defendant Goldberg, a practicing attorney, who had leased Suite 306 in the building but who had moved his office to another location nearby on Georgia Avenue prior to the expiration of his lease. The plaintiff and the defendant had a conference at which the defendant stated that he had a written lease with Fenwick Associates dated July 13, 1964, for Suite 306 with an original term of two years from August 1, 1964, with an option to renew the lease for two additional years at a higher rental. The defendant stated that he would assign this lease to the plaintiff and relying upon this statement, the plaintiff agreed that he would accept the assignment of the lease. A short written memorandum was signed by the parties stating that the plaintiff was authorized to move into the suite predicated upon the plaintiff's "executing an assignment agreement assigning my (Goldberg's) now existing lease on said premises to him and signing a 90-day Note for purchase of Carpeting and Draperies for price of $250.00." This memorandum was dated October 9, 1965, and had a notation at the bottom: "Received 3 checks 1. 100.00 payable at once 2. 50.00 payable on Nov. 1, 1965 3: 225.00 payable on Nov. 30, 1965."

The defendant Goldberg then prepared a written "As-

signment Agreement" dated October 11, 1965, between the parties, Goldberg being referred to as "Assignor" and James as "Assignee," which recited that the Assignor was the lessee under a lease executed July 13, 1964, a copy of which was attached and made a part of the Assignment Agreement, and Assignor "desires to assign the aforesaid lease to the Assignee, and the Assignee desires to accept the assignment of said lease." The agreement then provided that the Assignor "does hereby assign" to the Assignee the lease of July 13, 1964, already referred to, and then contains the following three provisions:

"2. Assignee does hereby accept the assignment of said lease and does hereby covenant with the Assignor that he will perform each and every term of said lease and that shall otherwise do no act or thing in breach of same. Assignee does further agree to hold harmless the Assignor from any claim made by any party arising out of or in connection with the above referred to lease, it being understood that Assignee shall be personally liable to Assignor in the event of any such claim.

"3. Assignee agrees that he shall not assign the said lease nor shall he sublet the premises described therein unless first obtaining the prior written consent of the Assignor.

"4. This agreement shall be binding upon the parties hereto, their executors, administrators, and/or assigns."

The lease of July 13, 1964, was attached to the Assignment Agreement and each page of the attached lease has the initials in ink of the parties. This lease, on a standard printed form for use by the landlord, provided for a two year term for Suite 306 from August 1, 1964, at a monthly rental of $225.00; the demised premises were to be used for the business of "Practice of Law" so long as the Lessee occupies the premises "and this lease is not assigned or said premises sublet as hereinafter provided;

* * *." The lease contained the following two further relevant provisions:

> "The Lessee covenants not to assign this lease, sublet nor underlet the demised premises or any portion thereof, without the consent of the Lessor first obtained in writing, and provided further that neither such assignment nor subletting nor underletting nor the consent of the Lessor thereto shall release, discharge, or affect the liability of the Lessee as provided in this lease, for the full term hereof."
>
> * * *
>
> "Lessee shall have the option to renew this lease for an additional period of two (2) years at the rental of $290.00 per month upon thirty (30) days written notice prior to the date of termination of this lease."

The plaintiff James needed continuity for his business. He had numerous telephone lines installed and incurred expenses for these installations and for advertising the address and telephone number for the location throughout the United States and elsewhere. The defendant instructed the plaintiff to pay the monthly rental of $225.00 to him and this was done. In early January 1966 the plaintiff James testified that he learned that he had not been assigned the lease as agreed and that the defendant Goldberg was his landlord. When he discovered this he "refused to pay additional rent to Yale Goldberg, and tendered about three months rent to Marvin Brown * * * the landlord agent for Fenwick Associates, my intended landlord." He then stated:

> "I attempted to get the assignment in writing, as set forth in the—it is set forth in the lease, and I discovered that the lease indicated that the assignor's permission for an assignment must be granted in writing, and I was seeking to obtain this assignment in writing directly

from Fenwick Associates through Marvin Brown, and others. I was unable to get it in writing."

Thereafter, Goldberg filed an action against James in the People's Court for Montgomery County to repossess the premises and to recover judgment for $675 unpaid rent. Goldberg recovered judgment for the unpaid rent and James was evicted by a writ of repossession after a judgment for the $675 and a writ of repossession were obtained by Goldberg in a trial de novo in the Circuit Court for Montgomery County, subsequent to an appeal from an identical judgment of the People's Court which had been taken by James.

On cross-examination, the plaintiff James testified that he held two academic degrees, one of Bachelor of Science and Economics from the Wharton School of Finance and Commerce, University of Pennsylvania and the other of LL.B. from George Washington University School of Law. He was not, however, a member of the Bar.

The plaintiff called Marvin Brown, the managing agent of the building for Fenwick Associates as his witness. Mr. Brown testified that Mr. James asked him if any space were available at 8730 Georgia Avenue, but he never leased Mr. James any space. Mr. James was never a tenant of Fenwick Associates. Mr. Brown never authorized Mr. Goldberg to assign his lease to James and was never requested to approve such an assignment. Mr. Brown did not lease space to Mr. James because of his credit reserves and credit record. He referred James to Goldberg. Goldberg spoke to him (Brown) about subletting the suite to James and Brown told Goldberg that the Fenwick Associates "agreed that he could sublet to Mr. James as long as Mr. Goldberg remained responsible for the lease." Mr. Brown knew that Mr. James took possession of the suite but there was no record at Fenwick Associates that he was occupying any space.

As his final witness, the plaintiff called Mr. Goldberg as his witness. Mr. Goldberg testified in regard to his

interview with Mr. James and the preparation of the Assignment Agreement by Goldberg and its execution by the parties. Goldberg charged James the same rent Goldberg was required to pay under the lease. He stated on direct examination that it was his intention to assign to James all of "my rights and title and interest in that lease, and that is all I assigned to him." He never at any time agreed "with Mr. James to obtain a complete assignment of the lease" and he never intended "to get an assignment of the lease [from the landlords] to him." He further testified that James had never, in writing or orally, asked him to exercise the option for the additional two year period.

As already indicated, the defendant Goldberg moved for a directed verdict in his favor at the end of the plaintiff's case, and the trial court granted the motion, giving reasons for that action. In our opinion, the trial court acted properly in granting the motion for a directed verdict in favor of the defendant on all three counts of the declaration and we shall affirm the judgment in favor of the defendant for costs.

## 1.

In count one of the declaration, the plaintiff James claimed damages from the alleged breach of contract by the defendant Goldberg. The contract set forth in count one was the written Assignment Agreement of October 11, 1965 (attached as Exhibit "A") to which was attached the lease of July 13, 1964 (attached as Exhibit "B"). The claim was that the lease was not "legally assigned" to the plaintiff and the defendant breached the agreement "when he did not, and never intended to, have the lease legally and completely assigned to the plaintiff so that the lessors would recognize him as such and his business interests and investments would be protected * * *." It was also alleged that the defendant instituted a People's Court action against the plaintiff as tenant and obtained judgment against the plaintiff for rent and possession.

There was no allegation in count one and there was no testimony offered by the plaintiff that the Assignment Agreement was ambiguous. We must determine the intentions of the parties from the language of the contract itself, not by what a party to the contract intended it to mean, or thought it meant, but "what a reasonable person in the position of the parties would have thought it meant." *Chesapeake Isle, Inc. v. Rolling Hills Development Company, Inc.*, 248 Md. 449, 453, 237 A. 2d 1, 3 (1968). See also *Chertkof v. Harry C. Weiskittel Co., Inc.*, 251 Md. 544, 553, 248 A. 2d 373, 379 (1968) and *Slice v. Carozza Properties, Inc.*, 215 Md. 357, 368, 137 A. 2d 687, 693 (1958). An unqualified assignment generally operates to transfer to the assignee all of the right, title and interest of the assignor in the subject of the assignment and does not confer upon the assignee any greater right than the right possessed by the assignor. See *Case v. Marshall*, 159 Md. 588, 152 A. 261 (1930). See also 6 C.J.S. "Assignments," § 82, pages 1136-37, and § 84, page 1139.

There is nothing in the Assignment Agreement to indicate that the assignment of the lease was to accomplish anything other than the transfer of the assignor's right, title and interest in the lease to the assignee. Indeed, it is clear from the language of the agreement that the assignee considered himself bound to the lessor under the attached lease in view of the provisions of paragraphs 2 and 3 of the lease providing for performance by the assignee of the terms of the attached lease with personal liability of the assignee to the assignor in the event of assignee's failure to perform such terms and providing for an agreement by the assignee not to sublet the lease without the prior written consent of the assignor. The assignee was charged with knowledge of the terms and provisions of the attached lease and initialed each page of that lease to indicate his actual knowledge of its terms and provisions. In addition to knowledge of the provision of the lease prohibiting subletting without the written consent of the lessors, the assignee knew that the

lessor would not accept him as a tenant and would refuse to grant the requested written consent to a subletting if and when application for such written consent were made by the assignor. There is no provision in the Assignment Agreement imposing any obligation upon the assignor to apply for such written consent and the assignor had no obligation by contract or otherwise to make such an application. The assignor, Goldberg, breached no contractual obligation and the trial court properly directed the verdict in his favor on count one of the declaration.

## 2.

In count two of the declaration, the plaintiff sought both compensatory and punitive damages resulting from an alleged fraud practiced upon him by the defendant. The alleged fraud consisted of a fraudulent and deceitful representation by the defendant, an attorney at law, "that the said lease would be completely and legally assigned, including the option to renew." Based solely upon that representation, the plaintiff paid the monthly rent to the defendant for several months "without knowledge that the lease had not actually been legally assigned to him." The defendant "fraudulently and deceitfully did not, and never intended to, have the said lease legally and completely assigned to the plaintiff so that the lessors would recognize him as such and his business interests and investments would be protected."

The elements of legal fraud are stated by Judge Marbury, for the Court, in *Suburban Properties Management, Inc. v. Johnson,* 236 Md. 455, 460, 204 A. 2d 326, 329 (1964) as follows:

"The elements of legal fraud are: (1) that a representation made by a party was false; (2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that that person not only relied up-

on the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that that person suffered damage directly resulting from the misrepresenation. *Appel v. Hupfield,* 198 Md. 374, 84 A. 2d 94; *Gittings v. Von Dorn,* 136 Md. 10, 109 Atl. 553."

In the present case, it is quite doubtful that there was any evidence to establish the first element mentioned, *i.e.,* a false representation. The plaintiff James testified that the defendant Goldberg "stated that he would assign the lease to me, which contained the provisions for additional rental period * * * He stated that my landlord would be Fenwick Associates." Then followed:

"Q. What, if any, conversation was had about the two year renewal provision? A. That I automatically got this as part of the assignment of the lease."

The plaintiff James did not state categorically that Goldberg promised to obtain the consent of the landlords, Fenwick Associates, to the assignment or subletting. James called Goldberg as a witness *for the plaintiff* and on his directed examination Goldberg was asked whether or not he agreed "at any time. . .with Mr. James that you would obtain a complete assignment of the leasee?" Goldberg's answer was: "Absolutely not."

Assuming, *arguendo,* that a false representation was proved, *prima facie,* there was a complete failure of proof by the plaintiff to establish element No. 4, *i.e.,* that the plaintiff had the right to rely upon the representation with the full belief of its truth. As we have indicated, James knew prior to the execution of the Assignment Agreement that Fenwick Associates would not accept him as their tenant. James, as a graduate from a law school, must have known by reading the lease, that written consent by the landlords to the assignment or subtenancy

was necessary to make him a tenant of the landlord and Paragraphs 2 and 3 of the Assignment Agreement negative any idea that James was to be the tenant of Fenwick Associates. Under these circumstances it is clear to us that James had no right to rely upon the alleged false representation and the lower court properly directed the verdict in favor of the defendant on count two.

### 3.

Finally, we come to count three of the declaration which claims compensatory and punitive damages from an alleged malicious abuse of process by the defendant in proceeding against the plaintiff in the People's Court and evicting him from the premises after the plaintiff had failed to pay Goldberg the rent for certain prior months. As Judge Horney stated, for the Court, in *Walker v. American Security & Trust Co. of Washington, D. C.*, 237 Md. 80, 87, 205 A. 2d 302, 306 (1964) :

> "A tort action for abuse of process, on the one hand, and the tort actions for malicious prosecution and malicious use of process, on the other hand, are essentially different and independent actions. An action for abuse of process differs from actions for malicious prosecution and malicious use of process in that abuse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued, without the necessity of showing lack of probable cause or termination of the proceeding in favor of the plaintiff, while actions for malicious prosecution and malicious use of process are concerned with maliciously causing criminal or civil process to issue for its ostensible purpose, but without probable cause."

There is no proof whatever in the present case that the defendant Goldberg improperly began the proceedings in the People's Court (indeed he was successful in

that court and on appeal to the Circuit Court) or that he used the process for eviction otherwise than as contemplated by law. The plaintiff James testified that he paid the judgment obtained by Goldberg and that subsequent to the action by Goldberg, James was "dispossessed of the premises." Goldberg, as one of the plaintiff's witnesses, testified on direct examination:

"Q. And did the sheriff come and physically evict him? A. I am not sure. I don't think so. I think, actually, he was moving out, and there were other actions going on at the time, and I don't think there was much to evict."

This is hardly evidence of the malicious abuse of process, and the trial court correctly directed the verdict for the defendant Goldberg on count three.

*Judgment affirmed, the appellant to pay the costs.*