64 F.3d 656
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Randy W. CALHOUN, Plaintiff-Appellant,
v.
EXXON CORPORATION, Defendant-Appellee.
 No. 94-1345.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 26, 1994.
Decided Aug. 11, 1995.
 
 ARGUED: Gerald Manly Bowen, McLean, VA, for Appellant. Gaspare Joseph Bono, HOWREY & SIMON, Washington, DC, for Appellee. ON BRIEF: Robert G. Abrams, James M. Burns, HOWREY & SIMON, Washington, DC, and Karen B. Satterlee, Katherine Witt Haight, EXXON COMPANY, USA, Houston, TX, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before RUSSELL and MURNAGHAN, Circuit Judges, and CHASANOW, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Randy W. Calhoun (Calhoun),[1] a former franchisee of the Exxon Corporation (Exxon), appeals the dismissal of his complaint, which alleged Exxon failed to comply with the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. Sec. 2801, et seq., and asserted pendent state law claims of fraud and negligent misrepresentation. We review de novo an order of dismissal entered pursuant to Federal Rule of Civil Procedure 12(b)(6) for Calhoun's failure to state a claim. For the reasons that follow, we find no error in the district court's order dismissing the complaint.
 
 
 2
 In the mid 1980's, Calhoun and Exxon entered into a Franchise Agreement and a Retail Service Station Lease for the premises located at the intersection of Libbie and Broad Streets in Richmond, Virginia. Paragraph 4 of the Retail Service Station Lease provided in part that:
 
 
 3
 4. UNDERLYING ESTATES: (This Section 4 shall be inoperative unless the blanks herein have been completed.) Lessee has been notified in writing prior to the commencement of the term of this lease:
 
 
 4
 (a) that Exxon is not the owner of the premises herein but holds the premises under a lease which: (1) expires on October 31, 1992, and (2) may be cancelled by Exxon's Lessor upon .... (days, months) notice to Exxon, and (3) might be extended to expire October 31, 2002 or N/A, and
 
 
 5
 (b) that such underlying lease might expire and not be renewed or extended beyond its expiration date.... (J.A. 30.) In Paragraph 23, the Retail Service Station Lease stated that:
 
 
 6
 THIS LEASE CONTAINS THE ENTIRE AGREEMENT AND UNDERSTANDING BETWEEN EXXON AND LESSEE PERTAINING TO THE SUBJECT MATTER OF THIS LEASE AND THERE ARE NO ORAL REPRESENTATIONS, STIPULATIONS, WARRANTIES OR UNDERSTANDINGS RELATING THERETO WHICH ARE NOT FULLY SET FORTH HEREIN.
 
 
 7
 (J.A. 34.) In 1988, Calhoun assigned his rights under the Franchise Agreement and Retail Service Station Lease to a third party.
 
 
 8
 In early 1990, Calhoun became interested in purchasing an Exxon service station. Calhoun alleged in Paragraph 10 of his complaint that Calhoun inquired of C.W. Holland, Exxon's regional Sales Representative, whether Exxon was "going to exercise its option and renew or extend the lease [for the service station located at the intersection of Libbie and Broad Streets in Richmond, Virginia] for another ten years past its expiration date in 1992 for another ten years?". Holland replied, "yes." Calhoun then purchased the service station.
 
 
 9
 On or about March 19, 1990, Exxon and Calhoun signed a "Consent to Assignment of the Retail Service Station Franchise," incorporating by reference the Retail Service Station Lease between Exxon and the third party who owned the franchise in the interim between Calhoun's first and second bouts as a franchisee. (J.A. 95-96.) That lease, as did the lease previously signed by Calhoun, provided that Exxon did not own the premises, and stated in part:
 
 
 10
 4. UNDERLYING ESTATES: (This Section 4 shall be inoperative unless the blanks herein have been completed.) Lessee has been notified in writing prior to the commencement of the term of this lease:
 
 
 11
 (a) that Exxon is not the owner of the premises herein leased but holds the premises under a lease which: (1) expires on OCTOBER 31, 1992, ... and
 
 
 12
 (b) that such underlying lease might expire and not be renewed or extended beyond its expiration date.... Exxon shall be under no obligation to seek an extension or renewal of such underlying lease or to exercise any extension or renewal rights Exxon has or may have under such underlying lease....
 
 
 13
 (J.A. 100.) The lease further recited that the written document constituted the entire agreement between the parties. (J.A. 104.)
 
 
 14
 A document entitled "Information to Prospective Dealer" furnished to and signed by Calhoun on March 19, 1990 also informed Calhoun that the underlying lease might not be renewed, stated that Exxon was under no obligation to continue to do business with him, and disclaimed reliance on any oral representations. (J.A. 138-140.) By letter dated February 21, 1992, Exxon notified Calhoun that it was not renewing the franchise agreement and that the underlying lease and franchise relationship terminated on October 31, 1992. (J.A. 144-45.)
 
 
 15
 Calhoun filed his complaint in the United States District Court for the District of Columbia, asserting that Exxon's failure to renew the franchise was improper both because Exxon failed to comply with provisions of the PMPA and because Exxon orally represented that it intended to renew the underlying lease. By Exxon's motion, the case was transferred to the District Court for Eastern District of Virginia. After further briefing, Judge Claude M. Hilton heard argument on February 11, 1994, and granted Exxon's motion to dismiss. The court found that Exxon complied with the governing ninety (90) day notice provision and that there was no clause in the agreements requiring Exxon to extend the lease. The district court further found that the PMPA preempted Calhoun's state law claims of fraud and negligent misrepresentation, if there was a cause of action under Virginia law for negligent misrepresentation.[2] On appeal, Calhoun contends that (1) technical compliance with the governing notice provision is insufficient for complete compliance with the PMPA in light of Exxon's misrepresentations and Calhoun's reliance thereon, (2) his state common law claims are not preempted by the PMPA, and (3) his fraud in the inducement claims are not barred by the parol evidence rule. Calhoun concedes that, if his reliance was unreasonable, the complaint was properly dismissed.
 
 
 16
 Under the PMPA, the expiration and nonrenewal of the underlying lease is a permissible reason to terminate a franchise agreement, as long as ninety (90) days notice is provided. 15 U.S.C. Secs. 2802(b)(2)(C), 2802(c)(4), 2804(a). Certainly, under the PMPA, a party cannot rely on oral representations that differ from the terms of later written agreements, particularly when the necessary notices were in fact provided in a timely fashion.
 
 
 17
 Similarly, Calhoun's state law claims, relying as they do on the alleged oral representation, also fail. The elements of fraud under Virginia law are not unique.
 
 
 18
 "The elements of actual fraud, to be proved by clear and convincing evidence, are: a false representation of a material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage to the misled party."
 
 
 19
 City of Richmond v. Madison Management Group, Inc., 918 F.2d 438, 447 (4th Cir.1990) (quoting Elliott v. Shore Stop, Inc., 384 S.E.2d 752, 756 (Va.1989)). "[I]n actions for fraud, reliance on false statements must be accompanied by a right to rely." Foremost Guar. Corp. v. Meritor Sav. Bank, 910 F.2d 118, 125 (4th Cir.1990). "[O]ne may not reasonably rely upon an oral statement when he has in his possession a contrary statement in writing." Id. at 126 (referring to Call Carl, Inc. v. BP Oil Corp., 554 F.2d 623 (4th Cir.), cert. denied, 434 U.S. 923 (1977), and James v. Goldberg, 261 A.2d 753 (Md.1970) (applying Maryland law)).
 
 
 20
 Calhoun attempts to avoid this established case law by arguing that Exxon represented that it elected to exercise its right to renew the underlying lease before Calhoun entered into the written contract, despite the fact that the contract expressly stated Exxon had the unfettered right to elect not to renew. Calhoun's reliance on City of Richmond v. Madison Management Group, Inc. in this regard is misplaced. In Madison Management Group, Inc., we addressed whether a promise, allegedly false when made, could support a fraud claim as well as a breach of contract claim when the same undertaking was encompassed in the contract. Here, in contrast, Calhoun is seeking to establish justifiable reliance on an oral representation that was not incorporated in the later written contract, and in fact was contradicted therein. No Virginia law has been cited that allows a party to a contract to rely on prior oral statements flatly contradicted by the signed writing which followed.
 
 
 21
 In Count III of his complaint, Calhoun purports to allege the tort of negligent misrepresentation. Calhoun does not seriously contend that Virginia law recognizes that tort separate from the tort of fraud, whether actual or constructive. Reply brief at 19-20. Rather, Calhoun seems to argue that intent may not be a necessary element of, at least, constructive fraud. Because Calhoun's state law fraud claim falls for lack of reasonable reliance, regardless of Exxon's intent, it is not necessary to consider Count III further.
 
 
 22
 Because (1) Exxon complied with the requirements of the PMPA in not renewing the underlying lease or Calhoun's franchise, and (2) the state law claims fall since Calhoun could not rely reasonably on the prior oral representation, the complaint was properly dismissed. Having found that Calhoun's state law claims are without merit, it is unnecessary for us to decide whether those claims were preempted by the PMPA. Accordingly, the judgment of the district court is
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Calhoun is the sole shareholder of Calhoun Industries, Inc
 
 
 [2]
 The district court, indicating there may not have been a cause of action for fraud in the inducement based upon these facts, remarked: "How can you have fraud in the inducement when you tell somebody something and then you sit down and look at the contract and it is not in there?" (J.A. 397.)