23 A.3d 308

**COLUMBIA ASSOCIATION, INC.**

v.

**Joseph L. POTEET, et ux.**

**No. 2056, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

July 1, 2011.

540

David H. Bamberger (DLA Piper, LLP, on the brief), Washington, D.C., for appellant.

Andrew Rading & Geoffrey W. Washington (Adelberg, Rudow, Dorf & Hendler, LLC, on the brief), Baltimore, MD, for appellee.

Panel: EYLER, JAMES R., WOODWARD, JAMES P. SALMON (Retired, Specially Assigned), JJ.

WOODWARD, J.

On August 14, 1969, appellees, Joseph Poteet and Shirley Clarke–Poteet (the "Poteets"), acquired title to real property that, pursuant to a declaration executed by the Poteets' predecessor in title, was subject to certain covenants, easements, charges, and liens. Article II of the declaration provided for a charge to be levied in each year against the property subject to the declaration, which included the property owned by the Poteets. The Poteets failed to pay the annual charges for which they were billed between July 1, 1973 and June 30, 2006.

On December 19, 2008, appellant, Columbia Association, Inc. ("Columbia"), filed a complaint against the Poteets in the Circuit Court for Howard County, seeking recovery of all of the annual charges, in the total amount of $45,716.87. After both parties filed motions for summary judgment, the circuit court granted summary judgment in favor of the Poteets as to Columbia's complaint and denied Columbia's motion for partial summary judgment as to the Poteets' liability for the annual charges.[1]

Columbia appeals from the judgment of the circuit court and presents three questions for our review, which we have rephrased:

I.  Did the circuit court err in ruling that the three-year limitations period for simple contracts, instead of the twelve-year period for specialties, applied because the declaration was not an instrument under seal?

II.  Did the circuit court err in ruling that the Poteets did not acknowledge the debt?

---

1. The circuit court also granted Columbia's motion for summary judgment as to the Poteets' counterclaim for breach of contract. The Poteets did not file a cross-appeal challenging that ruling.

III. Did the circuit court err in denying Columbia's motion for partial summary judgment as to the Poteets' liability for the annual charges?

For the reasons set forth herein, we shall affirm in part and reverse in part the judgment of the circuit court.

## BACKGROUND

On December 13, 1966, Howard Research and Development Corporation ("HRD"), the developer of the Town of Columbia, conveyed to Columbia approximately 13,690,118 acres of land (the "Property")[2] in order "to cause [certain] covenants, easements, charges and liens to run with, burden and bind the Property." On the same day, Columbia and C. Aileen Ames executed a Deed, Agreement and Declaration of Covenants, Easements, Charges and Liens (the "Declaration"), whereby Columbia conveyed the Property to Ames, subject to the covenants, easements, charges and liens set forth in the Declaration, and Ames agreed to the provisions of the Declaration. Ames, in turn, reconveyed the Property to HRD, "subject to, and burdened and bound by, all covenants, easements, charges and liens imposed hereby."

In the Declaration, Columbia conveyed the Property to Ames

subject, however, to the following covenants, easements, charges and liens, which it is hereby covenanted and agreed shall be binding upon ... [Ames], her heirs, executors, administrators and assigns ... and for the remainder of the unexpired terms of the leasehold estates assigned and conveyed hereby.

And the parties hereto further covenant, agree and declare as follows:

\* \* \*

---

2. The Property was actually conveyed to Columbia Park and Recreation Association, Inc., which changed its name to Columbia Association, Inc. in 1991. Although Columbia Park and Recreation Association, Inc. is the named party in the Declaration, we shall refer to Columbia Park and Recreation Association, Inc. as "Columbia" to avoid confusion.

## ARTICLE II

### Assessment of Annual Charge

Section 2.01. For the purpose of providing funds for use as specified in Article IV hereof, the Board [of Columbia] shall in each year, commencing with the year 1966, assess against the Assessable Property, a charge (which shall be uniform with respect to all Assessable Property) equal to a specified number of cents (not in excess of seventy-five cents) for each One Hundred Dollars ($100) of the then current "Assessed Valuation", as hereinafter defined,[3] of the Assessable Property. In making each such assessment, the Board shall separately assess each Lot based upon its Assessed Valuation, and each such Lot shall be charged with and subject to a lien for the amount of such separate assessment which shall be deemed the "Annual Charge" with respect to such Lot.

\* \* \*

Section 2.03. As soon as may be practical in each year, [Columbia] shall send a written bill to each Owner stating (i) the Assessed Valuation of each Lot owned by such Owner as the same appears on the appropriate public record; (ii) the number of cents per One Hundred Dollars ($100) of such Assessed Valuation assessed by the Board as the Annual Charge for the year in question, (iii) the amount of the Annual Charge assessed against each such Lot, stated in terms of the total sum due and owing as the Annual Charge, and (iv) that unless the Owner shall pay the Annual Charge within thirty (30) days following the date of receipt of the bill the same shall be deemed delinquent and will bear interest at the rate of six percent (6%) per annum until paid.

Section 2.04. If the Owner of any Lot shall fail to pay the Annual Charge within ninety (90) days following receipt of the bill referred to in Section 2.03 hereof, in addition to the right to sue the Owner for a personal judgment, [Colum-

---

**3.** As defined in the Declaration, "Assessed Valuation" is related to the valuation of real estate in each year for purposes of Howard County and State of Maryland ordinary taxes.

bia] shall have the right to enforce the lien hereinafter imposed to the same extent, including a foreclosure sale and deficiency decree, and (to the extent the appropriate court will accept jurisdiction) subject to the same procedures, as in the case of mortgages under applicable law, and the amount due by such Owner shall include the Annual Charge, as well as the cost of such proceedings, including a reasonable attorney's fee, and the aforesaid interest. . . .

\* \* \*

ARTICLE III

Imposition of Charge and Lien Upon Property

\* \* \*

Section 3.02. . . . [E]ach Owner of each Lot by the acceptance of a Deed therefore, whether or not it shall be so expressed in such Deed, shall be deemed to have agreed to be personally liable for the payment of each Annual Charge assessed by [Columbia] against such Lot in each year during any part of which such Owner holds title to such Lot or to a leasehold interest therein.

At the end of the Declaration, the following clause appears: "IN WITNESS WHEREOF the parties hereto have set their hands and respective seals as of the day and year first above written." Immediately below that clause are the signatures of the president and secretary of Columbia, and Ames. "[SEAL]" is printed after the signature of Ames. The seal of Columbia is affixed to the page containing said signatures.

On August 14, 1969, HRD executed a deed (the "Deed") conveying the real property, with improvements, located at 5904 Waterloo Road in Columbia, Maryland (the "property") to the Poteets, in fee simple. A clause in the Deed stated that the property was

[s]ubject . . . to those certain covenants, easements, charges, liens, restrictions and other encumbrances imposed upon the lots conveyed hereby by th[e] . . . Declaration dated December 13, 1966, by and between [Columbia], as Grantor, and [ ] Ames, as Grantee, and recorded among the Land

Records of Howard County in Liber W.H.H. 463 folio 158, etc., and the Grantees, their heirs and assigns, hereby covenant that the said covenants, easements, charges, liens, restrictions and other encumbrances shall be binding upon the Grantees, their heirs and assigns during such time as the Grantees, their heirs and assigns, or any of them, hold title to or be in possession of the lots conveyed hereby; and, further, that the said covenants, easements, charges, liens, restrictions and other encumbrances shall, in all events and regardless of ownership or possession be binding upon the lot conveyed hereby to the end that the same shall run with, bind and burden the said lot for the period specified in said . . . Declaration.

Columbia first sent a bill to the Poteets in 1973 stating the amount of the Annual Charge assessed against the property for that year. In response, the Poteets filed a petition for declaratory judgment and a restraining order against Columbia. The Poteets asserted that the property was exempt from the covenants, easements, charges, and liens set forth in the Declaration because, at the time they acquired title, the Poteets were unaware that the property was subject to those restrictions. In a Memorandum and Decree, dated November 15, 1973, the Circuit Court for Howard County dismissed the Poteets' petition and held that the property was, in fact, subject to the restrictions contained in the Declaration. The Poteets did not appeal the circuit court's ruling.

Thereafter, Columbia periodically sent collection letters and billing statements to the Poteets regarding due and unpaid Annual Charges assessed against the property. The Poteets, however, did not pay any of the Annual Charges for the period of July 1, 1973 to June 30, 2006. The Poteets conveyed the property to Waterloo Land No. 1, LLC by deed dated April 12, 2006.

On December 19, 2008, Columbia filed a complaint in the Circuit Court for Howard County, alleging that the Poteets "breached their obligations under the Declaration" by "failing to pay the Annual Charges." Columbia sought damages

against the Poteets in the amount of $45,716.87, which Columbia claimed was the total amount of the Annual Charges for the years 1973 to 2006. The Poteets filed an amended answer, together with a counterclaim for breach of contract.

On July 29, 2009, the parties filed cross-motions for summary judgment. Columbia moved for partial summary judgment as to liability on its claim against the Poteets and for summary judgment as to the Poteets' counterclaim. The Poteets moved for summary judgment on Columbia's complaint, arguing, *inter alia*, that Columbia's claim was time-barred as a matter of law. The parties then filed oppositions to the respective motions for summary judgment, as well as reply memoranda. Notably, in its opposition to the Poteets' motion for summary judgment, Columbia contended that the Declaration was an instrument under seal to which a twelve-year limitations period applied. Columbia also argued that the statute of limitations did not bar its claim against the Poteets "due to [the Poteets'] legal 'acknowledgment' of the debt."

The circuit court held a hearing on October 9, 2009. At the conclusion of the hearing, the court denied Columbia's motion for partial summary judgment as to liability, granted Columbia's motion for summary judgment as to the Poteets' counterclaim, and granted the Poteets' motion for summary judgment as to Columbia's complaint.

This appeal by Columbia followed.

### STANDARD OF REVIEW

A trial court shall grant a motion for summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that the [moving] party . . . is entitled to judgment as a matter of law." Md. Rule 2–501(f). We review an order granting summary judgment *de novo. Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 14, 852 A.2d 98 (2004). In our review, we construe the record, including all inferences, in the light most favorable to the non-

moving party. *Bednar v. Provident Bank of Md., Inc.,* 402 Md. 532, 542, 937 A.2d 210 (2007).

## *DISCUSSION*

### I.

### Instrument Under Seal and the Applicable Limitations Period

■ On appeal, Columbia first contends that the circuit court erred in ruling that Columbia's claim was barred by the three-year limitations period applicable to simple contracts under Maryland Code (1974, 2006 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article ("C.J.").[4] Columbia asserts that "[t]he contract at issue here—the one that the Poteets breached and the basis for [Columbia]'s claim—is the Declaration, not the[ ] [D]eed" by which the Poteets acquired title to the property. According to Columbia, the Declaration is a sealed instrument, and, therefore, "qualifies as a 'specialty' to which a twelve-year limitations period applies, as provided in [C.J.] § 5–102(a)(5)." Columbia contends that, because it filed its complaint against the Poteets on December 19, 2008, "that action was timely, at a minimum, as to all amounts due for the prior twelve years." Columbia concludes that the circuit court erred in entering summary judgment for the Poteets, because "there [wa]s no question that at least a substantial part of [Columbia]'s claim was not barred by limitations."

In response, the Poteets argue that the Declaration is not a specialty, and, therefore, Columbia's action on the Declaration is barred by the three-year statute of limitations applicable to simple contracts. According to the Poteets, the Court of Appeals in *Tipton v. Partner's Management Co.,* 364 Md. 419,

---

4. Maryland Code (1974, 2006 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article ("C.J."), entitled "Three-year limitation in general," states: "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

773 A.2d 488 (2001) considered a lease agreement containing "virtually i[den]tical language" to that found in the Declaration, and "held that such language did not create a specialty."

Moreover, the Poteets assert that, because they were not parties to the Declaration, did not sign the Declaration, and held no interest in the property when the Declaration was established in 1966, the Declaration was not an instrument under seal as it applied to them. Consequently, the Poteets contend that the three-year limitations period set forth in C.J. § 5–101 governs Columbia's claim on the Declaration against the Poteets.

The Poteets also argue that "[t]he Declaration provide[d] that the assessment for each year is a separate debt, with its own date on which limitations begin to run." Thus the Poteets conclude that, because Columbia filed the action in the present case in the circuit court on December 19, 2008, Columbia is time-barred from recovering any of the yearly debts that accrued before December 19, 2005.

Columbia's first contention on appeal raises two distinct issues. They are: (1) whether the Declaration was under seal so as to create a specialty instrument and thus make the applicable period of limitations twelve years under C.J. § 5–102(a), rather than the three-year period under C.J. § 5–101; and (2) if the Declaration was under seal, whether the limitations period for specialty instruments applied to the Poteets, who were not signatories to the Declaration.

C.J. § 5–102, entitled "Specialties," provides, in relevant part:

(a) *Twelve-year limitation.*—An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

(1) Promissory note or **other instrument under seal;**

(2) Bond except a public officer's bond;

(3) Judgment;

(4) Recognizance;

(5) **Contract under seal**; or

(6) Any other specialty.

(Emphasis in bold added).

C.J. § 5–102 does not itself define what constitutes a "specialty." *Wellington Co., Inc. Profit Sharing Plan & Trust v. Shakiba*, 180 Md.App. 576, 601, 952 A.2d 328 (2008). In *General Petroleum Corp. v. Seaboard Terminals Corp.*, 19 F.Supp. 882, 883–84 (D.Md.1937), the United States District Court for the District of Maryland opined that a specialty is "a well-known term of the common law which in Maryland and elsewhere by judicial decision denotes a legal instrument under seal." In addition, *Black's Law Dictionary* 1398 (6th ed.1990) defines the term "specialty" as follows: "A contract under seal. A writing sealed and delivered, containing some agreement. A special contract. A writing sealed and delivered, which is given as a security for the payment of a debt, in which such debt is particularly specified." [5] (Citation omitted).

In *Warfield v. Baltimore Gas & Electric Co.*, 307 Md. 142, 143, 512 A.2d 1044 (1986), the Court of Appeals held that "the inclusion of the word 'seal' in a pre-printed form executed by an *individual* [wa]s sufficient to make the instrument one under seal." (Emphasis added). The Court described the form at issue in that case as follows:

> In 1979 appellant, Barbara L. Warfield, executed a guaranty to appellee, Baltimore Gas & Electric Company (BG &

---

**5.** In *Wellington Co., Inc. Profit Sharing Plan & Trust v. Shakiba,* 180 Md.App. 576, 602, 952 A.2d 328 (2008), this Court stated that, "[e]ven if a specialty is involved, [ ] a cause of action is not necessarily governed by C.J. § 5–102." We held that a two-step inquiry is required in determining whether the twelve-year limitations period under C.J. § 5–102 applies to an action: "(1) Is the [instrument] a specialty? (2) Is the cause of action 'on' the specialty?" *Id.* at 603, 952 A.2d 328. In the case *sub judice,* there is no dispute that Columbia's suit against the Poteets was "on" the Declaration. Accordingly, we shall focus on the first step of the test announced in *Wellington,* namely, whether the Declaration is a specialty.

E). It was on a regular form of the company. "(SEAL)" was printed at the end of each of the prepared lines on the form and appears after the signature of Warfield. The instrument does not recite that it is under seal.

*Id.*

In holding that the guaranty was a contract under seal, the Court rejected Warfield's contention that "there must be some recognition in the instrument that it is under seal." *Id.* at 147–48, 512 A.2d 1044. The Court quoted with approval the following language from *General Petroleum Corp. v. Seaboard Terminals Corp.*, 23 F.Supp. 137, 140 (D.Md.1938):

> If the contract is signed by an *individual* opposite and in obvious relation to a legally sufficient seal, the instrument will be taken as a sealed document, where there is nothing on the face of the paper to indicate the contrary.... A recital of the sealing or of the delivery of a written promise is not essential to its validity as a sealed contract.

*Id.* at 143–44 (quotations omitted). Accordingly, the Court held that the twelve-year statute of limitations under C.J. § 5–102 was applicable. *Id.* at 143, 148.

In *Gildenhorn v. Columbia Real Estate Title Insurance Co.*, 271 Md. 387, 389, 317 A.2d 836 (1974), the Court of Appeals considered, *inter alia,* whether two title insurance policies were specialties. The insurance policies had the following testimonium clause: "IN WITNESS WHEREOF, Columbia Real Estate Title Insurance Company has caused its corporate name and seal to be hereunto affixed by its duly authorized officers." *Id.* at 390, 317 A.2d 836 (quotations omitted). Underneath that clause was printed the name of Columbia Real Estate Title Insurance Company, with the signatures of the president and secretary below that. *Id.* The corporate seal was printed over those signatures. *Id.*

The Court examined the role that sealed instruments play in corporate transactions, stating:

> In the early law it was held that a corporation could not contract except under its corporate seal. This rule persisted, but was increasingly relaxed during the 19th century. Today, in the absence of charter or statute to the contrary,

a corporation may bind itself by a writing not under seal to the same extent as an individual. As a result, the main purpose of the corporate seal now is as a *prima facie* authentication that the document is the act of the corporation and that the officers who have executed it have been thereunto duly authorized. **This function of the corporate seal, however, must be distinguished from its use as a general seal. The mere fact that the corporate seal appears on the instrument other than in the usual place of the private seal would not make the instrument a specialty in the absence of a recital affixing the seal or of extrinsic evidence showing an intention to have it serve the function of a general seal.** In other words, it is a question of fact in any specific case as to whether the corporation has employed its corporate seal as a general seal or whether it has adopted any other permissible form of seal as convenient for the [purpose of authentication].

*Id.* at 398, 317 A.2d 836 (emphasis added) (citations omitted).

The *Gildenhorn* Court concluded that the aforesaid testimonium clause in the insurance policies indicated an intention to establish an instrument under seal. *Id.* at 403, 406, 317 A.2d 836. Thus the Court held that the policies were specialities and, as a result, the twelve-year statute of limitations was applicable. *Id.* at 406, 317 A.2d 836.

Turning to the instrument at issue in the present case, Ames, in her individual capacity, signed the Declaration next to the word "seal." According to the Court of Appeals' holding in *Warfield,* the inclusion of the word "seal" in the Declaration next to Ames's signature was, in itself, sufficient to make the Declaration an instrument under seal as to Ames. *See* 307 Md. at 143, 512 A.2d 1044. The Declaration is also an instrument under seal as to Columbia. Pursuant to the Court of Appeals' opinion in *Gildenhorn,* the mere affixation of Columbia's corporate seal on the Declaration did not necessarily make the Declaration a specialty. *See* 271 Md. at 401–02, 317 A.2d 836. Nonetheless, the recital in the Declaration directly above the signatories' names, stating "IN WITNESS WHEREOF the parties hereto have set their hands and

respective seals as of the day and year first above written," is conclusive evidence of an intent to create a sealed instrument. *See id.* at 403, 317 A.2d 836 (formal recitals such as "signed and sealed" and "witness my hand and seal" in the body of an instrument make the instrument a sealed one for statute of limitations purposes). Accordingly, a claim based upon either Ames's or Columbia's obligations under the Declaration is subject to the twelve-year statute of limitations applicable to specialties.

The Poteets rely on the Court of Appeals' opinion in *Tipton* in arguing that the Declaration is not a document under seal. That reliance is misplaced. In *Tipton,* the Court considered whether the three-year limitations period under C.J. § 5–101 governed a residential lease agreement. 364 Md. at 422, 773 A.2d 488. The Court described the lease as follows:

> The lease was for a period of one year and was to commence on January 1, 1992 and end on December 31, 1992. Just above the signatures of the parties on the pre-printed form lease, it stated that: "IN WITNESS WHEREOF the parties hereto have set their hands and seals the day and year first above written." Adjacent to the signatures at the end of the signature line was the word "SEAL" in parenthesis. There was no language in the lease in respect to statutes of limitation.

*Id.* at 422–23, 773 A.2d 488.

The Court looked for the legislature's intent in enacting C.J. § 5–101, and found that since the 18th century, a three-year limitations period had applied to actions on residential leases. *Id.* at 434–42, 773 A.2d 488. In light of that legislative intent, the Court held that

> claims for arrearages of rent under a residential lease, even a lease to which a seal is affixed, must be filed within the three-year limitation period unless the parties to the lease agree, in the body of the lease, that the lease is subject to the twelve-year limitation period of [C.J. §] 5–102.

*Id.* at 445, 773 A.2d 488.

The holding in *Tipton* is inapplicable in the instant case. In *Tipton,* the Court said that it was immaterial whether the

residential lease was a sealed instrument. *Id.* at 422, 773 A.2d 488. Instead, the Court determined that actions for rent arrearages under residential lease agreements had always been governed by a three-year limitations period. *Id.* at 445, 773 A.2d 488. In other words, the Court's holding was based on an interpretation of the limitations statute, not on whether the lease was a sealed instrument.

Additionally, the *Tipton* Court, in dicta, observed:

> The use of the word seal on documents involving the conveyance of interests in real property . . . has historically had a separate purpose from that involving contracts of a different nature. While the use of the word seal, in an appropriate context, could also create a specialty, historically its primary use in the conveyancing of property interests . . . was to create a presumption of adequate consideration and a presumption of validity.

*Id.* at 425, 773 A.2d 488.

The Court recognized that the historical purpose of affixing seals to real property conveyancing documents raised a novel issue: "Whether, without more information in the document itself, or evidence presented, the affixation of the word seal alone, would elevate a deed or lease to a specialty, when in fact, its ancient, and historical use, was primarily to create presumptions of consideration and validity." *Id.* at 431, 773 A.2d 488. Although the Court declined to answer that question,[6] it opined that, "[w]hile the affixation of the word seal to real property conveying documents is no longer required for validation purposes, its use remains widespread, we suspect, because of its use and the requirements of its use, historically." *Id.* at 433, 773 A.2d 488.

The Poteets focus on the dicta in *Tipton* and argue that "the Court's elaboration upon the historical, though now vestigial,

---

**6.** The Court in *Tipton* found it "unnecessary" to answer that question in light of its holding "that the provisions of the Courts and Judicial Proceedings Article d[id] not apply to establish a twelve-year limitations period" for claims for arrearages of rent under a residential lease agreement. 364 Md. 419, 433–34, 773 A.2d 488 (2001).

significance of [sic] concept of seals in conveyancing documents [ ] is fatal to [Columbia]'s argument" that the Declaration is a specialty. We disagree and shall explain.

■ When the Declaration was executed in 1966, conveyancing of interests in real property was governed, generally, by Article 21 of the Maryland Code. Maryland Code (1957, 1966 Repl.Vol.), Art. 21, § 6 provided, in relevant part: "Every deed conveying real estate *shall be signed and sealed by the grantor* or bargainor...." (Emphasis added). Thus, to establish the consideration and validity of the Declaration as a conveyance of real property, Columbia, as grantor, was statutorily required to sign the Declaration under seal, which it did. Ames, on the other hand, was the grantee of the conveyance, and, therefore, was not required to sign the Declaration under the statute. Ames's signature, however, was needed to create a binding "Agreement and Declaration of Covenants, Easements, Charges and Liens." [7] Thus, as with any other contract, Ames's signature under seal was sufficient to make the Declaration a specialty as to her obligations thereunder.[8] Consequently, even if the dicta in the *Tipton* opinion applied in the present case, it does not alter our decision.

Therefore, we conclude that the Declaration is a sealed instrument so as to create a specialty within the meaning of C.J. § 5–102.

■ Next, we reject the Poteets' argument that the Declaration was not an instrument under seal as it applied to them. Pursuant to the Declaration, each lot of the Property subject to the Declaration, including the lot ultimately acquired by the Poteets, became burdened and bound by the covenants, ease-

---

7. As previously indicated, the title of the Declaration was *"Deed, Agreement and Declaration* of Covenants, Easements, Charges and Liens." (Emphasis added).

8. Maryland law applicable to seals makes clear that "ordinarily when a seal is attached to the signature of one of the parties but not to that of the other party, the contract as to the latter is a simple contract while as to the former it is a contract under seal." *Mayor of Federalsburg v. Allied Contractors, Inc.,* 275 Md. 151, 157, 338 A.2d 275 (1975).

ments, charges, and liens imposed in the Declaration when the Property was conveyed to Ames and when Ames conveyed the Property to HRD. The Declaration also provided that the covenants, easements, charges, and liens "shall be binding upon ... [Ames], her heirs, executors, administrators and *assigns.*" (Emphasis added). Furthermore, the Deed by which the Poteets acquired title to their property stated that the covenants, easements, charges, liens, restrictions, and other encumbrances set forth in the Declaration were "binding upon the [Poteets], their heirs and assigns."

Looking at the provisions of the Declaration and the Deed, it is clear that the Deed operated as general assignment to the Poteets of Ames's rights and obligations under the Declaration as to the property conveyed by the Deed. *See* 6 Am.Jur.2d *Assignments* § 1 (1964) ("An 'assignment' is a transfer of property or some other right from one person (the 'assignor') to another (the 'assignee'), which confers a complete and present right in the subject matter to the assignee." (Footnotes omitted)). In *James v. Goldberg,* 256 Md. 520, 527, 261 A.2d 753 (1970), the Court of Appeals recognized that an assignee's rights are concomitant to those of an assignor: "An unqualified assignment generally operates to transfer to the assignee all of the right, title and interest of the assignor in the subject of the assignment and does not confer upon the assignee any greater right than the right possessed by the assignor." *See also Turner v. Brocato,* 206 Md. 336, 346, 111 A.2d 855 (1955) (quotations omitted) ("If an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased."). More importantly, in the recent case of *University System of Maryland v. Mooney,* 407 Md. 390, 411, 966 A.2d 418 (2009), the Court of Appeals stated that "assignees are bound to the same limitations period as their assignor." (Quotations omitted). Thus the Poteets, as assignees under the Deed, were subject to the twelve-year statute of limitations period applicable to specialties under C.J. § 5–102.

## II.

## Doctrine of Acknowledgment

█ Columbia also argues that the circuit court "erred in ruling at the summary judgment stage, based upon this record, that there was no acknowledgment by the Poteets that would take the case out of the statute of limitations." Columbia asserts that, under Maryland law, "if [a] debtor acknowledges that [an existing] debt has not been paid, then the statute of limitations is not implicated and does not bar suit on the debt." Columbia contends that the Poteets, "by their conduct and statements," acknowledged that "the Annual Charges applied to [them]" and that "those charges ha[d] not been paid." In support of that contention, Columbia claims that "the Poteets brought suit [in 1973] seeking a declaratory judgment that they were not responsible for [the] Annual Charges ... precisely because they understood that they *were* bound by the Declaration and thereby obligated to pay those charges." (Emphasis added by appellant). Columbia further asserts that "[t]he Poteets acceded to [the circuit court's] final determination when they failed to appeal that ruling." Finally, Columbia points to the affidavits of the Poteets, filed in the circuit court, wherein, according to Columbia, the Poteets repeatedly acknowledged that they were obligated to pay the Annual Charges by stating that they "refused to pay each and every assessment which were received annually over a period of some thirty years." Columbia therefore concludes that "there was a genuine issue of fact regarding" whether the doctrine of acknowledgment applies that "should be resolved at trial."

The Poteets counter that "[t]he trial court did not err in finding that [they] did not acknowledge each seperately [sic] accruing debt after 1973 so as to toll the statute of limitations." According to the Poteets, "if there was a debt due to [Columbia] at the moment of acknowledgment in 1973, the limitations were tolled, and began to run anew, at the moment of acknowledgment, in 1973." Moreover, the Poteets assert that, because "the assessments [are] separate debts, each in

its own year," an acknowledgment in 1973 would have "no effect on [the] limitations [period] as to debts not in existence at the time of the acknowledgment," *i.e.,* any debts that accrued after 1973. Thus the Poteets contend that the doctrine of acknowledgment is inapplicable and that Columbia's action on the Declaration is time barred.

■ Maryland law has long recognized that an acknowledgment of a debt barred by the statute of limitations removes the bar and revives the remedy. *Jenkins v. Karlton,* 329 Md. 510, 531, 620 A.2d 894 (1993); *Potterton v. Ryland Group, Inc.,* 289 Md. 371, 375, 424 A.2d 761 (1981); *James v. Thurn,* 265 Md. 501, 505, 290 A.2d 490 (1972); *Doughty v. Bayne,* 222 Md. 361, 364–65, 160 A.2d 609 (1960).[9] The Court of Appeals explained the rationale underlying the doctrine of acknowledgment in *Barney v. Smith,* 4 H. & J. 485, 495–96 (1819):

[T]he Act of Limitations does not operate to extinguish the debt, but to bar the remedy. The Act of Limitations is predicated on the principle, that from length of time a presumption is created that the debt has been paid, and that the debtor is deprived of his proof by the death of his witnesses or the loss of receipts. It is the design of the Act of Limitations to protect and shield debtors in such a situation; and consistent with this principle and this view,

---

**9.** The Court of Appeals, however, previously held that, in the case of a specialty, "an acknowledgment of the debt at any time during the twelve-year period will not arrest the operation of the statute, and an express promise to pay the debt subsequent to the twelve-year period will not revive the remedy." *McMahan v. Dorchester Fertilizer Co.,* 184 Md. 155, 157, 40 A.2d 313 (1944); *see also Frank v. Wareheim,* 177 Md. 43, 56, 7 A.2d 186 (1939). That holding was based on the specific language found in earlier versions of the section of the Maryland Code on specialties. *See Frank,* 177 Md. at 56–57, 7 A.2d 186 (interpreting Maryland Code (1924, 1935 Supp.), Art. 57, § 1); *Cnty. Trust Co. v. Harrington,* 168 Md. 101, 104–05, 176 A. 639 (1935) (interpreting Maryland Code (1924), Art. 57, § 3). The language of the specialties statute remained unchanged from 1888 to 1973. *Tipton,* 364 Md. at 437, 773 A.2d 488. In 1973, the statute on specialties was revised and moved to C.J. § 5–102. *Id.* Unlike prior versions of the specialties statute, the current language of C.J. § 5–102 does not indicate whether an acknowledgment of debt arrests the operation of the statute as to a specialty.

the decisions have been made, that **the acknowledgment or admission of the debtor will take the case out of the Act of Limitations,** because if the money is still due and owing, the defendant has not suffered from lapse of time, nor has any inconvenience resulted to him therefrom.

\* \* \*

The Act of Limitations was never intended to prevent the recovery of debts really due, but to protect persons from old claims when the evidence of their discharge, from length of time was supposed to have been lost.

(Emphasis added). Similarly, in *Oliver v. Gray,* 1 H. & G. 204, 218 (1827), the Court of Appeals said:

The Act of Limitations, according to the received construction, proceeds upon the supposition, that from length of time the debt is paid, and was only intended to protect a party where **the presumption arising from lapse of time is, either, that the debt has been discharged, or never existed, and not to protect him from a debt acknowledged by himself to be still due and unpaid, with no other excuse for not paying it than the supposed bar created by the Act. When, therefore, a party admits the debt to be due, but standing upon the Act of Limitations alone, in the same breath refuses to pay it, he admits a case, to which the Act, according to its spirit and reason, does not apply,** under the interpretation given to it, and his refusal cannot avail him. But the continuing existence of the debt continues and carries with it the implied assumpsit that the law raises, which is not rebutted by his refusal to pay. Hence the very common use in the books of the terms "takes the case out of the Statute of Limitations;" that is, that it is a case not embraced by the statute.

(Emphasis added).

At oral argument before this Court, counsel for Columbia contended that *Barney* and *Oliver* stand for the proposition that the statute of limitations "was designed to avoid prejudice to a debtor who has discharged—that is paid—an obligation, but, due to the passage of time, is unable to prove that he

paid, because witnesses have died, receipts have been lost, and so forth." Applying that theory to the instant case, Columbia claimed:

> [I]f the debtor acknowledges that the debt has not been paid, which is what we have [in the present case]—Mr. and Mrs. Poteet testified during the case at their depositions and sworn affidavits that they never paid [the Annual Charges]—then the purpose underlying the statute of limitations—that is, to avoid prejudice—is unnecessary, because there is no prejudice. They haven't lost the ability to prove a payment that never occurred. . . . [I]n this case, the[ ] [Poteets] acknowledged that they never paid. As the *Barney v. Smith* case says, it was never the intent of the statute of limitations to benefit somebody who hasn't paid [ ] just by the passage of time. There's no prejudice to be avoided.

We disagree with Columbia's interpretation of the doctrine, and conclude that the circuit court did not err in ruling that there was no acknowledgment by the Poteets that would remove the limitations bar. We shall explain.

The Poteets' suit in 1973 seeking a declaratory judgment and a restraining order against Columbia did not, as Columbia asserts, constitute an acknowledgment by the Poteets that they were "bound by the Declaration and thereby obligated to pay th[e] [Annual] [C]harges." Rather, the Poteets' purpose for filing the petition in 1973 was "to be declared to be not responsible for the yearly assessments of [Columbia]."

█ Moreover, even if the Poteets' decision not to appeal the circuit court's dismissal of their claim in 1973 constituted an acknowledgment of the debt due to Columbia, thus removing the bar created by the statute of limitations, the limitations period was restarted from the date of the acknowledgment. *See Potterton,* 289 Md. at 378, 424 A.2d 761. Under former Maryland Rule 812 a, an appeal had to be filed within 30 days from the date of the judgment. *Eberly v. Eberly,* 253 Md. 132, 134, 251 A.2d 900 (1969). As noted *supra,* the judgment of the circuit court dismissing the Poteets' petition was filed on November 15, 1973. Thus, if the Poteets' ac-

knowledgment of the debt was made 30 days from the day of that judgment, the twelve-year limitations period to file an action to recover any debt existing at the time of the acknowledgment ended on December 15, 1985. Accordingly, the circuit court properly concluded that the statute of limitations barred Columbia from recovering annual assessments that accrued before December 15, 1973.

Finally, Columbia asserts that, for the Annual Charges accruing from 1973 to 2006, the bar of the statute of limitations was removed by the Poteets' acknowledgment that those charges had not been paid. In other words, Columbia contends that an acknowledgment by the debtor that the creditor claims a debt is owed, not that the debtor admits an obligation to pay the debt, is sufficient to remove the bar of the statute. In so arguing, Columbia misreads *Barney* and *Oliver.*

■ Under *Barney* and *Oliver,* an acknowledgment sufficient to remove the bar of the statute of limitations requires an admission by the debtor, in word and/or deed, that the debt is still owed by the debtor. *See Barney,* 4 H. & J. at 495 ("[T]he acknowledgment or admission of the debtor will take the case out of the Act of Limitations."). In *Oliver,* the Court of Appeals explained that, "[w]hen, therefore, *a party admits the debt to be due,* but standing upon the Act of Limitations alone, in the same breath refuses to pay it, *he admits a case,* to which the Act, according to its spirit and reason, does not apply." 1 H. & G. at 218 (emphasis added); *see also Mayor of Federalsburg v. Allied Contractors, Inc.,* 275 Md. 151, 160–61, 338 A.2d 275 (1975).

In the case *sub judice,* the Poteets denied any obligation for the Annual Charges after the circuit court's dismissal of the Poteets' petition in 1973. Specifically, in their respective affidavits, Joseph Poteet and Shirley Clarke–Poteet declared:

I never agreed to the imposition of Columbia [ ] assessment fees alleged in the Complaint in this matter. There was no contract and no breach.

*     *     *

I refused to pay each and every assessment which were [sic] received annually over a period of some thirty years.

Thus, although the Poteets did, in fact, acknowledge receiving Columbia's billing statements for the Annual Charges from 1973 to 2006 and refusing to pay the same, the Poteets never admitted that they owed any of the Annual Charges. Indeed, they expressly denied any such obligation. Accordingly, we conclude that there was no acknowledgment by the Poteets that removed the bar of the statute of limitations for the Annual Charges from 1973 to 2006.

## III.

### The Poteets' Liability for the Annual Charges

Preliminarily, the parties agree that the assessment for each year was a separate debt, with its own date on which limitations began to run. The Declaration provided that Columbia "shall in each year, commencing with the year 1966, assess against the Assessable Property, a charge . . . based upon its Assessed Valuation, . . . which shall be deemed the 'Annual Charge' with respect to [each] Lot." Consequently, an Annual Charge did not exist until it was calculated by Columbia and billed to a property owner. The Declaration also stated that Columbia's right to sue a property owner for a personal judgment for an unpaid Annual Charge arose 90 days after the owner failed to pay the Annual Charge. Thus, for each charge, the twelve-year limitations period began to run 90 days after the owner received a bill for the Annual Charge assessed against his or her property. Accordingly, because suit was filed on December 19, 2008, Columbia could seek recovery on only those Annual Charges where the right to sue under the Declaration had accrued on or after December 19, 1996.

Columbia argues that the circuit court erred in denying its motion for partial summary judgment as to the Poteets' liability for the Annual Charges, because the circuit court had previously held in its Memorandum and Decree, dated November 15, 1973, that the Poteets were required to pay the Annual

Charges. Citing *Colandrea v. Wilde Lake Community Ass'n, Inc.,* 361 Md. 371, 761 A.2d 899 (2000), Columbia asserts that the circuit court's prior ruling "stands as a conclusive determination of this issue, and well-established principles of *res judicata* and collateral estoppel barred any subsequent effort on the part of the Poteets to relitigate whether they were required to pay [Columbia] the [ ] Annual Charges." We agree.

The Court of Appeals in *Colandrea,* 361 Md. at 388, 761 A.2d 899, stated that "all matters actually litigated [in a previous action] . . . are conclusive in [a] subsequent proceeding" between the same parties under the principles of res judicata and collateral estoppel. In the present case, the parties are the same parties in the 1973 circuit court case. The issue presented by the Poteets in the prior proceeding was whether their property was subject to the Annual Charges imposed in the Declaration. As previously noted, in dismissing the Poteets' petition, the circuit court ruled that the covenants, easements, charges, liens, restrictions, and other encumbrances set forth in the Declaration were binding upon the Poteets. In the case *sub judice,* Columbia moved for summary judgment as to its claim that the Poteets were liable for the Annual Charges. Because the circuit court's judgment in the earlier action on the merits was conclusive as to the Poteets' liability for the Annual Charges, the circuit court erred in denying Columbia's motion for partial summary judgment.

In conclusion, the circuit court erred in ruling that Columbia's action against the Poteets was barred by the statute of limitations as to the Annual Charges on which the right to sue had accrued between December 19, 1996 and December 19, 2008. The court also erred in denying Columbia's motion for partial summary judgment as to the Poteets' liability on those charges. The court, however, correctly held that the statute of limitations barred Columbia from recovering those Annual Charges where the right to sue under the Declaration had accrued prior to December 19, 1996.

JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID 1/3 BY APPELLANT AND 2/3 BY APPELLEES.